IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Transatlantica Commodities Pte Ltd., <br>     Plaintiff <br><br> v. <br><br> Hanwin Shipping Limited, <br>     Defendant, and <br><br> American Shipping & Chartering Corp., <br>     Garnishee | § § § § § § § § § § | Civil Action No: H-22-cv-01983 <br><br> In Admiralty under FRCP 9(h) |

## ANSWER OF GARNISHEE AMERICAN SHIPPING AND CHARTERING CORPORATION ("ASCC") AND MOTION TO VACATE OR MODIFY RULE B ORDER

Garnishee ASCC respectfully files and serves its Answer to the Complaint of Plaintiff/Libellant Transatlantica Commodities Pte., Ltd. ("Transatlantica").[1] This pleading also contains ASCC's Motion to Vacate or Modify the Court's Rule B Order of June 24, 2022.[2]

**ORIGINAL ANSWER**

1. **Rule 12 Defenses**. While reserving the right to more thoroughly brief these issues, ASCC raises the following defenses under Rule 12 of the Federal Rules of Civil Procedure:

a. The Complaint does not properly invoke Admiralty Jurisdiction, as the alleged "property" to be attached is not the property of Defendant Hanwin Shipping, Limited ("Hanwin"), and thus cannot constitute grounds for jurisdiction under Federal Rule of Civil Procedure 9(h). Thus, under Federal Rule of Civil Procedure 12(b)(1), this matter should be dismissed, with prejudice. ASCC incorporates the grounds stated below in its Motion to Vacate or, Alternatively, Modify the Rule B Order.

---

[1] This Answer is timely because of an agreement between counsel for Transatlantica and ASCC.
[2] Document 13.

b. The Complaint fails to state a claim upon which relief can be granted, and thus should be dismissed under Federal Rule of Civil Procedure 12(b)(6). Specifically, the Complaint does not identify the actual "property" with sufficient specificity.

2. **Specific Denials**. Subject to and without waiving the foregoing defenses, ASCC addresses the specific allegations found in the Complaint as follows:

a. ASCC specifically denies the jurisdictional and venue allegations found in paragraph 1. ASCC has no basis, independent of representations of counsel for Hanwin and Transatlantica, to admit or deny the existence of an arbitration as described in paragraph 1. Thus, ASCC denies the remaining jurisdictional allegations in paragraph 1.

b. ASCC admits that if the funds in its accounts are Hanwin's property, venue is proper in this District and Division as alleged in paragraph 2. However, ASCC denies those funds are Hanwin's property, and thus denies the allegations in paragraph 2.

c. ASCC admits the allegations in paragraphs 3, 4, and 5.

d. ASCC admits it is the agent of Hanwin, but denies using "Hanwin funds" to service the vessels at issue. Rather, Hanwin electronically transfers money to ASCC's accounts, where it is normally co-mingled with other ASCC funds to pay bills for clients as needed. While ASCC tracks these funds by each client it serves, it does not normally maintain separate accounts for each client. Thus, ASCC denies those allegations in paragraph 6 as inconsistent with how ASCC actually does business.

e. ASCC admits to the factual assertions made in paragraphs 7 and 8 of the Complaint.

f. ASCC denies the allegations found in paragraphs 9 and 10 of the Complaint.

g. The allegations in paragraphs 11, 12, and 13 of the Complaint do not pertain to ASCC. However, ASCC denies them out of an abundance of caution.

h. ASCC denies the allegations in paragraphs 14, 15, 16, 17, as well as the allegations made in the Prayer for Relief found in the Complaint.

3. **Affirmative Defenses.** Subject to and without waiving the foregoing, ASCC asserts the following affirmative defenses:

a. Lack of privity of contract with Transatlantica.

b. ASCC is not a party to the arbitration at issue.

c. ASCC asserts a right to any offset and credit from funds garnished or seized by Transatlantica in any other legal proceeding, including but not limited to:

   i. Civil Action No. 1:22-cv-01275-RDB currently on file in the District of Maryland, Northern Division ("The Baltimore Proceeding");

   ii. Civil Action No. 1-cv-22-03348, *Transatlantica Commodities Pte Ltd. v. Hanwin Shipping, Ltd., et al*, in the United States District Court for the District of New Jersey, Camden Viscinage Division ("The Camden Proceeding"); and/or

   iii. Also, Hanwin recently sued Transatlantica in Civil Action No. 1-22-cv-11182, *Hanwin Shipping Limited v. Transatlantica Commodities Pte, Ltd,* in the United States District Court for the District of Massachusetts, Boston Division ("The Boston Proceeding").

Upon information and belief, ASCC believes Transatlantica already has approximately $1,000,000.00 as security from these other lawsuits.

d. ASCC asserts the defense of collateral estoppel as to the amount of security at issue. Transatlantica only seeks $1,984,913.38 in both the Baltimore and Camden Proceedings, and has not modified or amended its Complaint in the either the Baltimore or Camden Proceeding to seek

3

the amount claimed to be at issue in the instant matter. Thus, the amount of security requested in this case should be reduced to $1,984,913.38.

**MOTION TO VACATE OR MODIFY THE RULE B ORDER**

4. ASCC moves under Supplemental Rule E to vacate the Rule B Order on the grounds that the alleged property of Hanwin had effectively transferred to ASCC so that ASCC could pay debts incurred for ASCC's work as Hanwin's agent on not only the vessel at issue in this case, but also other, unrelated vessels under charter to Hanwin. Thus, the funds mentioned in the Complaint and Rule B Order are not Hanwin's property, insofar as Hanwin has no control over the funds or other legal title to it. Moreover, on July 22, 2022, Hanwin filed suit against Transatlantica in the District of Massachusetts. Thus, Hanwin is now present in a District in the United States, eliminating the need for a Rule B garnishment in Texas.

Relevant Factual Background

5. As the Court is aware from Transatlantica's briefing, the vessel at issue is the *M/V Tac Imola*. Upon information and belief, Transatlantica and Hanwin are currently involved in an arbitration in London concerning a fire that broke out on the *M/V Tac Imola* while she transited from China to the United States. There are no allegations that ASCC had anything to do with causing or contributing to this fire. Moreover, ASCC is not a party to that arbitration proceeding.

6. Currently, ASCC holds $979,893.63 in funds paid to ASCC by Hanwin in a separate bank account from its main accounts payable account. ASCC owes a total of $924,137.13 to various vendors (stevedores, pilot fees, port fees, terminal fees, sub-agents, port agents, etc.) as of today for purposes of fulfilling its obligations to Hanwin and Hanwin's vessels. Of these figures, $289,549.00 in ASCC's accounts is present for $204,806.82 in vessel debts related to the

*M/V Tac Imola.*  Before the Court issued the Rule B Order, ASCC paid $73,000.00 to Terminal Shipping as an advance for port expenses and sub-agents on May 25, 2022.

7. Normally, ASCC does not separate funds by client.  However, ASCC did this, by agreement with counsel for Transatlantica, so that ASCC could service its other clients and not arguably violate the Rule B Order.  Once ASCC receives a payment from Hanwin, it goes into an ASCC controlled account.  Hanwin no longer has any control or possession of the money.  Hanwin is not a co-signer on ASCC's accounts.  Hanwin has no ability to cut checks or disburse funds from ASCC's accounts.  The payments from Hanwin are not only used by ASCC to pay bills, but also part of each transfer constitutes ASCC's agent fee for the work performed for Hanwin.

8. Since the Court issued the Rule B Order on June 24, 2022, ASCC has not received any further transfers or payments from Hanwin.  However, ASCC still has responsibilities to Hanwin's vessels.  The chart below summarizes the amounts paid by Hanwin to ASCC and what ASCC owes for each vessel.

| VESSELS | PORT | AMOUNT PAID | AMOUNT OWED |
|---|---|---|---|
| M/V NORSE IJMUIDEN | NEW ORLEANS | $ 184,297.76 | $ 197,321.87 |
| M/V TAC IMOLA | ALBANY | $ 52,683.00 | $ 28,080.00 |
| M/V TAC IMOLA | NEWARK | $ 107,112.72 | $ 90,266.04 |
| M/V SINGAPORE SPIRIT | HOUSTON | $ 39,871.95 | $ 51,522.62 |
| M/V SINGAPORE SPIRIT | BALTIMORE | $ (18,879.11) | $ - |
| M/V SINGAPORE SPIRIT | TAMPA | $ 90,593.37 | $ - |
| M/V YANGTZE SPIRIT | HOUSTON | $ 56,818.50 | $ 68,309.98 |
| M/V BALTIC SPIRIT | FAIRLESS HILLS | $ (9,511.89) | $ (5,709.96) |
| M/V YANGTZE SPIRIT | NEW ORLEANS | $ 142,523.27 | $ 150,863.77 |
| M/V TAC IMOLA | COEYMANS | $ (56,325.16) | $ (7,317.90) |
| M/V INDIGO SPICA | CAMDEN | $ 152,139.80 | $ 145,993.89 |
| M/V INDIGO SPICA | BALTIMORE | $ 22,020.42 | $ - |
| M/V TAC IMOLA | BALTIMORE | $ 216,549.00 | $ 204,806.82 |
| | TOTAL | $ 979,893.63 | $ 924,137.13 |
| | | | |
| M/V TAC IMOLA | TOTAL | $ 320,019.56 | $ 315,834.96 |
| ALL OTHER VESSELS | TOTAL | $ 659,874.07 | $ 608,302.17 |

5

Applicable Law

9. The Fifth Circuit noted in the case of *Alphamate Commodity GMBH v. CHS Europe, SA* in 2010 that Rule B creates "procedures by which a valid maritime claim may form the basis for a writ of maritime attachment."[3] Under Rule B, jurisdiction only exists if the court can attach property of the actual defendant.[4] When such property is attached, Supplemental Rule E(4)(f) allows "any person claiming an interest … to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment *should not be vacated* or other relief granted consistent with these rules."[5]

10. In both the Fifth and Second Circuits, the standard for this hearing (in addition to satisfying the filing and service requirements of Rules B and E) is the plaintiff bears the burden to show it:

   a. has a valid *prima facie* admiralty claim against the defendant;

   b. cannot find the defendant in the district;

   c. the defendant's property can be found within the district; and

   d. there is no statutory or maritime prohibition on the attachment.

11. With the facts stated above in mind, and in light of this applicable law, ASCC Moves to Vacate the Rule B Order in its entirety, because Transatlantica fails to satisfy elements (a) and (c), as listed above. The money in ASCC's accounts is not Hanwin's property. Hanwin has no ability to control the money. There is no authority located by the undersigned within this Circuit to indicate funds paid to an agent by a vessel operator and deposited in the agent's sole bank account constitute the property of the vessel operator so as to trigger Rule B jurisdiction.

---

[3] 627 F.3d 183, 186 (5th Cir. 2010), quoting *Sonito Shipping Co., Ltd. V. Sun United Mar., Ltd.*, 478 F. Supp. 2d 532, 536 (S.D. N.Y. 2007) (cleaned up).
[4] *Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V.*, 249 F.3d 413, 421 (5th Cir. 2001).
[5] Supplemental Rule E(4)(f) (emphasis added).

12. If anything, this case is analogous to a 2009 decision from the Second Circuit, *Shipping Corp. of India v. Jaldhi Overseas PTE, Ltd.*[6] In that case, the Second Circuit, in what it called a "mini *en banc*" decision,[7] over-ruled a prior Second Circuit opinion and held Electronic Fund Transfers could not be attached when they passed through an intermediary bank located in New York City. Holding "if the res is not the property of the defendant, then the court lacks jurisdiction,"[8] the Second Circuit determined a defendant transferring funds through an intermediary bank did not constitute a transfer of property to trigger Rule B (or Admiralty) jurisdiction.[9]

12. While not directly on point, *Jaldhi* is instructive insofar as ASCC is, essentially, an intermediary akin to an intermediary bank. ASCC pays port fees, pilot fees, and stevedore fees (among other things) out of the money Hanwin pays to ASCC, and also takes a fee for this service. The money is already earmarked for someone else, and no one except for ASCC has the ability to access, control, or spend the money. Under any reasonable interpretation of Admiralty or Texas law, the money in ASCC's accounts is ASCC's – not Hanwin's property. If there is no property in the district, there is no jurisdiction per the plain language of Rule B. Thus, the Court lacks subject-matter jurisdiction under Rule 12(b)(1).

13. Moreover, Transatlantica's alternate grounds for jurisdiction (the Federal Arbitration Act) is moot because Hanwin made an appearance in federal court, specifically in the District of Massachusetts. Transatlantica's claims for arbitration security (which it seeks in the instant matter through garnishment and attachment) are, under any reasonable reading of Rule 13(a), a compulsory counter-claim that must be brought in that proceeding. If judicial economy

---

[6] 585 F.3d 58 (2d Cir. 2009).
[7] 585 F.3d 58, 67, n. 9.
[8] 585 F.3d 58, 69.
[9] 585 F.3d 58, 71.

and comity is considered, Transatlantica should pursue that security directly against Hanwin in Massachusetts.

14. Alternatively, ASCC moves to modify the Order in line with principles of equity. ASCC is currently unable to service any of Hanwin's vessels, including those wholly unrelated to this dispute. Thus, in the alternative, ASCC asks this Honorable Court to allow it to use the funds present in its account, as outlined in the chart above, to pay for services to the other Hanwin vessels, while keeping the money for the *M/V Tac Imola* in a separate account.

### REQUEST FOR ORAL HEARING

15. ASCC respectfully requests, under Rule E, a prompt hearing at the Court's earliest convenience.

### PRAYER

For the above-stated reasons, ASCC requests this Honorable Court vacate the Rule B Order and dismiss this case, with prejudice, under Rule 12(b)(1) for lack of subject-matter jurisdiction. ASCC also requests all other relief (at law as well as in equity or admiralty) to which it is justly and rightly entitled.

Respectfully submitted,

**CHAMBERLAIN, HRDLICKA, WHITE, WILLIAMS & AUGHTRY, P.C.**

By: /s/ *F. Daniel Knight*
F. Daniel Knight
State Bar No. 24041265
SDTX Bar No.: 37334
1200 Smith Street, Suite 1400
Houston, Texas 77002
(713) 658-2571
(713) 658-2553 (Fax)
daniel.knight@chamberlainlaw.com

**ATTORNEYS FOR ASCC**

**CERTIFICATE OF SERVICE**

       The undersigned attorney verifies his Firm served a true and correct copy of this document via Efile Service and/or Email upon the following counsel of record under the Federal Rules of Civil Procedure and an agreement of the parties on the 25th day of July, 2022.

J. Stephen Simms
SIMMS SHOWERS LLP
201 International Circle, Ste. 230
Baltimore, Maryland 21030
jssimms@simmsshowers.com

      /s/ *F. Daniel Knight*
      F. DANIEL KNIGHT

| IN THE UNITED STATES DISTRICT COURT<br>FOR THE SOUTHERN DISTRICT OF TEXAS<br>HOUSTON DIVISION | | |
|---|---|---|
| Transatlantica Commodities Pte Ltd.,<br>　Plaintiff<br><br>v.<br><br>Hanwin Shipping Limited,<br>　Defendant, and<br><br>American Shipping & Chartering Corp.,<br>　Garnishee | § § § § § § § § § § § | Civil Action No: H-22-cv-01983<br><br><br><br>In Admiralty under FRCP 9(h) |

STATE OF TEXAS　§
　　　　　　　　　§
COUNTY OF HARRIS　§

**VERIFICATION OF ANATOLI DOUDNIKOV**

I am the Senior Vice-President for American Shipping and Chartering Corporation ("ASCC"). My business address is 11451, Katy Freeway, Suite 330 Houston, Texas 77079. I've held my position with ASCC since 2021. I am over the age of 21 and competent to provide this Verification.

I've read the factual allegations and statements made in ASCC's Answer to Transatlantica's Complaint. I've also read the factual allegations and statements made in ASCC's Motion to Vacate or Alternatively Modify the Rule B Order in this case. Those factual allegations and statements are true and correct, based on my personal knowledge of ASCC's business practices, ASCC's relationship with Hanwin, and my general knowledge of the shipping industry, as well as communications with the various parties at issue.

I've also read ASCC's Answers to the Interrogatories from Transatlantica. The factual information contained in those responses is true and correct, based upon my personal knowledge ASCC's relationship with Hanwin, and my general knowledge of the shipping industry, as well as communications with the various parties at issue.

Under 28 U.S.C. § 1746(1), I certify, under penalty of perjury, the foregoing is true and correct.

DATE: July 25, 2022　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　Anatoli Doudnikov