IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Transatlantica Commodities Pte Ltd., | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 22-cv-01983 |
| Hanwin Shipping Limited, | § § | IN ADMIRALTY |
| Defendant and, | § § § | |
| American Shipping and Chartering Corp., | § § | |
| Garnishee. | § | |

**DEFENDANT HANWIN SHIPPING LIMITED'S
MEMORANDUM OF LEGAL AUTHORITIES
IN RESPONSE TO THE COURT'S OCTOBER 24, 2022 MINUTE ENTRY ORDER**

Defendant Hanwin Shipping Limited ("Hanwin"), subject to its restricted appearance according to Supplemental Admiralty Rule E(8), respectfully submits this memorandum of legal authorities in response to the Court's October 24, 2022 Minute Entry Order directing Hanwin to file "its legal authority supporting its argument that Plaintiff should be required to post security even if Defendant cannot first post security," and in support of requiring Transatlantica to post countersecurity on Hanwin's counterclaims. *See* Doc. 54.  Hanwin respectfully submits that the question at issue can be framed as follows: whether money garnished in the hands of ASCC is security given for Transatlantica's benefit within the meaning of Rule E(7)(a) of the Supplemental Rules for Admiralty or Maritime Claims (the "Supplemental Rules").

Contrary to Transatlantica's assertion at the October 24, 2022 conference, numerous courts faced with attachments of funds held with third-party garnishees have found that funds attached by a Plaintiff are security within the meaning of Supplemental Rule E(7).  As shown below, those courts all ordered countersecurity on a defendant's counterclaims.

1

I.  **LEGAL AUTHORITIES**

Hanwin submits the following authorities for the Court's consideration:

1. *Finecom Shipping Ltd v. Multi Trade Enters.* AG, No. 05-cv-06695, 2005 WL 2838611, 2005 U.S. Dist. LEXIS 25761 (S.D.N.Y. Oct. 25, 2005) (attached hereto as **Exhibit 1**).

*Finecom Shipping* is nearly identical to this action and reflects a maritime dispute concerning which party – owners or charterers – was responsible for cargo damage claims under a charterparty agreement between the litigants, under which the plaintiff owners filed a Rule B attachment proceeding, and the defendant charterers filed a counterclaim, each seeking security in aid of London arbitration.

In *Finecom*, the court granted plaintiff's application for an attachment in the amount of plaintiff's claims (approximately $1 million) . . . and found that "approximately $30,000 of defendant's assets have been restrained to date pursuant to the attachment." No. 05-cv-06695, 2005 WL 2838611, 2005 U.S. Dist. LEXIS 25761, at *1 (S.D.N.Y. Oct. 25, 2005). *See* Ex. 1. On consideration of the charterer's counterclaim, the Court ordered the plaintiff to post countersecurity "in the same amount . . . *as the plaintiff has succeeded in attaching defendant's assets*, and to provide additional security matching any additional property plaintiff is able to restrain in the future, up to a maximum of . . . the amount of defendant's counterclaim." *Id.* at *6 (emphasis added).

Just as here, the court in *Finecom* found it equitable to award countersecurity to place the parties on equal footing, because "if one party is deprived of the use of its property during the litigation but the adverse party is not, despite the pendency of reciprocal claims, the party with the security may have unfair leverage in the action." *Id.* at *2 (citation omitted).

It is also notable that the claim asserted by the charterer in *Finecom*, for an owner's negligent handling of cargo resulting in cargo damage for which it was responsible under the

parties' charter party agreement, is indistinguishable from Hanwin's counterclaim against Transatlantica here. *Compare* Dkt. 7 in Case No. 05-cv-06695 (S.D.N.Y.) (Verified Answer and Counterclaim) at ¶ 14 (attached hereto as **Exhibit 2**) (seeking countersecurity in aid of London arbitration arising from an allegation that "Plaintiff negligently stowed and/or otherwise failed properly to care for a cargo of hot rolled steel coils . . . resulting in substantial damage to the cargo," following Plaintiff's attachment of Defendant's assets) *with* Dkt. 18 (Verified Answer and Counterclaim of Hanwin Shipping Limited) at ¶¶ 11-12 ("The cargo fire was caused by Transatlantica's lack of due diligence in loading, stowing, and securing the cargo."; "Transatlantica's failure to properly load, stow, and secure the cargo constituted a breach of the charter party between Hanwin and Transatlantica.").

2. *Clipper Shipping Lines, Ltd. v. Glob. Transporte Oceanico S.A.*, No. 06-CV-15299, 2007 WL 646329, 2007 U.S. Dist. LEXIS 18827 (S.D.N.Y. Feb. 26, 2007) (attached hereto as **Exhibit 3**).

In *Clipper Shipping*, the court cited *Finecom* with approval, noting that "Judge Lynch ordered the plaintiff to provide security in the same amount that it had succeeded in attaching and that it provide additional security *matching any additional property it should subsequently succeed in attaching*." No. 06-cv-15299, 2007 WL 646329, 2007 U.S. Dist. LEXIS 18827, at *4 (S.D.N.Y. Feb. 26, 2007) (emphasis added). The record in *Clipper Shipping* reflects that the Plaintiff in that case served banks seeking to attach electronic funds transfers in the hands of those banks, and had succeeded in attaching funds. The Court granted the defendant's motion for countersecurity and ordered the plaintiff to post a bond or other satisfactory security to "match[] . . . any additional property [Plaintiff] has restrained or is able to restrain in the future *in any jurisdiction* in connection with the underlying arbitration, up to a maximum of [the Defendant's counterclaim]." *See id.* at *7-8 (emphasis added). This case supports the Court's tentative holding that Transatlantica should

3

be required to post security in an amount at least equivalent to Hanwin funds previously attached both in Texas and other jurisdictions.[1]

3. *Voyager Shipholding Corp. v. Hanjin Shipping Co.*, 539 F. Supp. 2d 688 (S.D.N.Y. 2008) (attached hereto as **Exhibit 4**).

In *Voyager Shipholding*, the Court again awarded countersecurity equivalent to the amount of funds that had been successfully attached at third party garnishee banks. 539 F. Supp. 2d 688, 690 (S.D.N.Y. 2008). Notably, the Court explained at length that the varying results in these cases reflecting either a decision to award countersecurity that is either limited "to the amount of the security obtained by the plaintiff" in the form of attached funds, or, at other times, for the full amount of a defendant's counterclaim, "do not reflect different views of the law, but rather are rooted in the essentially discretionary and fact-bound nature of countersecurity orders." *Id.* at 692-693. The Court went on to explain in relevant part:

> There is certainly no general principle of law limiting an award of countersecurity to the amount originally attached. *Such an absolute rule would be a travesty, not an application, of the rule that awards of countersecurity aim to place the parties on an "even footing."* As Hanjin rightly points out, if after a collision between two vessels, the owner that suffered only minor damages reaches the courthouse first, limiting the party with much greater damages to equal countersecurity hardly puts the parties on an equal footing: the claims of one are fully secured, while the other's remain mostly unsecured, unfairly giving considerable leverage to the fully secured party.

*Id.* at 693 (emphasis added; additional citations omitted). This is fully consistent with the Fifth

---

[1] To date, Hanwin, its affiliates or agents have caused **$3,232,622.31** to be posted in various actions in the United States and in other jurisdictions, consisting of (i) $800,000 initially to an escrow account held by Ince & Co., by agreement with Transatlantica; (ii) $195,857.22 in the New Jersey action; (iii) $856,871.46 in the Panama action; (iv) $400,000 in the Louisiana action; and (v) $979,893.63 in the Texas action (held by ASCC). Transatlantica has posted a total of **$964,283.35**, consisting of (i) $564,283.35 in the Massachusetts action, and (ii) $400,000 in the Louisiana action. *See, e.g.,* Dkt. 21 at 3-5 (detailing related litigations). Should the court find that the $979,893.63 held by ASCC is Hanwin's property, and therefore security for the benefit of this action, the amount of security that Transatlantica should post to match the security it has already received is **$2,268,338.96**, which would be equivalent to the $3,232,622.31 quoted above, less the $964,283.35 that Transatlantica has already provided as security.

Circuit's view of the broad discretion that the Court enjoys in whether to order countersecurity, and supports that the Court has the discretion to fashion a countersecurity order "for cause shown" that fits the facts of this case, in this *quasi in rem* Rule B proceeding. *See Titan Navigation, Inc. v. Timsco, Inc.*, 808 F.2d 400, 405 (5th Cir. 1987) ("We can readily contemplate instances when permitting one party to enjoy security without requiring countersecurity could result in injustice. For example, when no maritime lien or statutory right is involved, as in an action commenced *quasi in rem* under Rule B, there usually would be little or no reason to permit a complainant to enjoy unilateral security rights, absent strong justification").

4. *Tang Kheok HWA Rosemary v. Jaldhi Overseas Pte Ltd.*, 531 F. Supp. 2d 586 (S.D.N.Y. 2008) (attached hereto as **Exhibit 5**).

*Tang Kheok* reflects yet another example where a court ordered the plaintiff to post countersecurity equal to the amount of attached funds held at JPMorgan Chase upon a restrained electronic funds transfer intercepted and attached at the bank prior to its payment to a third party.[2] On the facts of that case, the Court found that "since [plaintiff] RM Martin has received security for its claims in the form of a Rule B attachment [of money in the hands of non-party bank J.P. Morgan Chase], [defendant] Jaldhi is entitled to counter-security for its counter-claims pursuant

---

[2] The foregoing authorities arise in the context of Rule B litigation in which Plaintiffs attached electronic funds transfers being sent through U.S. banks located in the Southern District of New York. The Plaintiffs attached funds in accounts at the non-party garnishee banks. In 2009, the Second Circuit in *Shipping Corp. of India v. Jaldhi Overseas PTE, Ltd.*, notably held that electronic funds transfers being processed by an intermediary bank are not property subject to attachment under Rule B. That is because the Second Circuit found that "[f]or maritime attachments under Rule B, however, the question of ownership is critical. As a remedy *quasi in rem*, *the validity of a Rule B attachment depends entirely on the determination that the res at issue is the property of the defendant at the moment the res is attached.*" *Shipping Corp. of India v. Jaldhi Overseas PTE Ltd.*, 585 F.3d 58, 69 (2d Cir. 2009) (emphasis added); *see also* Dkt. 15 (ASCC Answer) at ¶¶ 12-13. In many of these cases, the financial institution garnishees holding funds of the Defendant also later stipulated to deposit the amount of funds attached by the Plaintiff into the registry of the Court, under Rule B(3)(a). *See* Rule B(3)(a) ("If the garnishee admits any debts, credits, or effects, they shall be held in the garnishee's hands or paid into the registry of the court, and shall be held in either case subject to further order of the Court."). But the Courts in these cases did not determine whether to order countersecurity based on whether the funds at issue were held in the hands of a garnishee pending further order of the Court or if they were deposited into the registry of the Court. In either event, those attached funds constituted security given for damages in the original action and formed the basis for awards of countersecurity under Supplemental Rule E(7)(a).

to Rule (E)7, provided, of course, that Jaldhi's counterclaims are not frivolous on their face." 531 F.Supp.2d 586, 589. [3]

## ARGUMENT

The foregoing authorities are in line with the long-recognized purposes of a Rule B action for "foreign attachment" against a Defendant who is not found within the district, namely "to secure jurisdiction over an absent party *and to obtain security* for potential judgment where the absent party's assets are transitory." *Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 48 (2d Cir. 2008) (emphasis added); *see also* 29 MOORE'S FEDERAL PRACTICE § 705.04, n. 11 (2022) (noting that "the attachment or garnishment of the defendant's property then provides a source of funds as security for payment of a judgment entered on the *in personam* claim") (citing, *e.g.*, *Swift & Co. Packers v. Compania Colombiana Del Caribe, S. A.*, 339 U.S. 684, 693 (1950) ("[foreign attachment] has two purposes: to secure a respondent's appearance and to assure satisfaction in case the suit is successful")).

Requiring a plaintiff to post countersecurity following the attachment of property of the defendant is "a traditional procedure in admiralty." *See Transporte Caribe v. M/V Feder Trader*, 860 F.2d 637, 638 (5th Cir. 1988); *see also Titan Navigation, Inc. v. Timsco, Inc.,* 808 F.2d 400,

---

[3] There are yet other examples reflecting a Court's award of countersecurity on a defendant's counterclaim, based on the restraint of funds attached in the hands of a third-party garnishee. *See Aracruz Trading, Ltd. v. Kolmar Grp. AG*, Civil Action No. 3:13-cv-1651, 2015 WL 269141, 2015 U.S. Dist. LEXIS 6581, at *9, *16, *25 (D. Conn. Jan. 21, 2015). (finding that defendant Kolmar Group AG was entitled to an award of countersecurity in light of the "security Kolmar was forced to give through attachment" where the record reflects that Kolmar provided the "attached funds or their equivalent" and noting that, barring the assertion of a "manifestly or blatantly frivolous" claim, "[a]n unbroken line of cases, appellate and district court, hold that Admiralty Rule E(7) entitles an admiralty or maritime counterclaimant to reciprocal countersecurity"). The exception is that countersecurity may be excused on appropriate facts and circumstances where a party provides evidence that it is financially unable to proceed with its original claim. *See Result Shipping Co. v. Ferruzzi Trading USA*, 56 F.3d 394, 399 (2d Cir. 1995) (citing *Titan Navigation, Inc. v. Timsco, Inc.*, 808 F.2d 400, 403 (5th Cir. 1987) (noting that although not all courts are uniform, "when a party is financially unable to post countersecurity, courts often dispense with the requirement of the rule"). Unlike Hanwin, who on October 12, 2022 moved for reconsideration of the countersecurity order made by the District of Massachusetts court in Case No. 22-cv-11182 in light of the financial burdens and prior provision of security in these cases, Transatlantica has not alleged or evidenced that it is financially unable to post countersecurity.

402 (5th Cir.1987) ("[t]he concept of countersecurity is found in the first promulgation of rules in American admiralty courts, and it has continued to date with little substantive change"). Courts have long observed that the purpose of Rule E(7) is straightforward—namely, "to place the parties on an equality as regards [to] security." *Titan Navigation, Inc. v. Timsco, Inc.,* 808 F.2d 400, 403 (5th Cir.1987) (citing *Washington-Southern Navigation Co. v. Baltimore & Philadelphia S.B. Co.*, 263 U.S. 629, 638-39 (1924).

The record in this case reflects that the funds restrained constitute security for purposes of determining the defendant's counterclaims and countersecurity – as they are being held by ASCC for the benefit of Transatlantica pending further order of the Court. On July 25, 2022, ASCC filed its Answer and Motion to Vacate or Modify Rule B Order, in which it stated that it holds the "$979,893.63 in funds paid to ASCC by Hanwin *in a separate bank account* from its main accounts payable account," and that these funds were only separated following receipt of the attachment order, and "*by agreement* with counsel for Transatlantica." Dkt. 15 at ¶ 6 (emphasis added); *see also* September 9, 2022 Hearing Transcript at 31:9-32:13 (testimony regarding placing the Hanwin funds in a separate account); DX 8 (ASCC bank statement for separate account). Because ASCC has placed the "Hanwin funds" in a separate account for the benefit of Transatlantica, these funds constitute "security" within the meaning of Rule E(7), which forms the basis for Transatlantica's obligation to post countersecurity. *See supra* at 1-5 (collecting legal authorities including *Finecom Shipping*, *Clipper Shipping*, *Voyager Shipholding,* and *Tang Kheok*).

Subsequently, the Court held an evidentiary hearing, and although Transatlantica had the burden of proof but did not present any witnesses or exhibits of its own, ASCC's witness disclaimed that the funds were Hanwin's property. *See, e.g.*, Dkt. 47 at 2-3 (summarizing ASCC witness testimony at September 9, 2022 evidentiary hearing). Nonetheless, ASCC's witness also

testified that after the attachment order, ASCC took steps to identify funds in its account attributable to Hanwin business, as reflected on a spreadsheet it prepared (DX 31), and transferred those funds it had identified from its general operating account to a separate account. *See* Sept. 9, 2022 Tr. at 31:9 – 32:20; DX 8. As such, although ASCC has challenged the status of the funds, ASCC has admittedly segregated "$979,893.63 in funds paid to ASCC by Hanwin in a separate bank account from its main accounts payable account," and these funds were segregated following receipt of the attachment order and "by agreement with counsel for Transatlantica." This reflects that, for purposes of the countersecurity order, the Hanwin funds held by ASCC have been segregated and stand as security pending further order of the Court, a point with which we understand ASCC's counsel agreed at the October 24, 2022 status conference.[4]

Hanwin acknowledges that the Rule E(7)(1) states that "[w]hen a person who has given security for damages in the original action asserts a counterclaim that arises from the transaction or occurrence that is the subject of the original action, a plaintiff for whose benefit the security has been given must give security for damages demanded in the counterclaim." But Transatlantica's proposed reading of the Rule, relying on a defendant's performing the act of voluntarily "giving" or "pledging" security in order to obtain countersecurity, elevates form over substance and ignores the fact that, in the course of the parties' numerous litigations since the outset of the cargo fire

---

[4] In a teleconference with ASCC's counsel this morning, ASCC's counsel indicated that it may "owe Hanwin" certain funds that were no longer owed to third parties, because certain invoices had subsequently been paid via other channels or by other interested parties such as cargo interests. ASCC suggested it was exploring whether ASCC could "refund" amounts to Hanwin that could then be deposited into Court to stand as security in this action. *See also* Dkt. 55 (letter from ASCC filed Oct. 26, 2022). From the perspective of the pending fully briefed motions before the Court, the question of the Court's jurisdiction should again be based "on the determination that the *res* at issue is the property of the defendant at the moment the *res* is attached," *see supra* at 5 n.2 (citing *Jaldhi*) and not on after-acquired property or subsequent events affecting the amount of that security. Because ASCC segregated $979,893.63 in funds which are now held for the benefit of Transatlantica pending further order of this Court, Hanwin's position on ASCC's suggestion is that ASCC can move for a reduction in security on the basis of subsequent evidence, but that on the record as it stands it is well within the Court's discretion to require Transatlantica to post countersecurity in the amount of any Hanwin funds that the Court determines it has successfully attached here or in other jurisdictions, in order to place the parties on equal footing.

aboard the *TAC IMOLA* – Hanwin *has* already given a great amount of security for the damages that Transatlantica claims in this action, and far more than Transatlantica has been subjected to. *See supra* at 3 n.1. As such, (i) Transatlantica has the benefit of any Hanwin funds attached and held at ASCC, and (ii) Transatlantica has the benefit of Hanwin having previously given security in respect of Transatlantica's claims arising from its serial use of Rule B proceedings since June 2022, and (iii) Hanwin has accordingly "shown cause" for the Court to exercise its discretion to consider those facts – agreed between the parties – when considering the level at which to set countersecurity, given the "essentially discretionary and fact-bound nature of countersecurity orders." *See Voyager Shipholding*, 539 F. Supp. 2d at 692-693; *see also Clipper Shipping*, 2007 U.S. Dist. LEXIS 18827, at *7-8 (ordering countersecurity equivalent to the security previously attached or restrained "in any jurisdiction" in connection with the underlying arbitration, up to a maximum of the defendant's counterclaim).

## CONCLUSION

For the foregoing reasons, Hanwin respectfully requests that the Court award Hanwin countersecurity on its claims to the extent of Hanwin's counterclaim in an amount equivalent to (i) the amount of Hanwin funds attached by Transatlantica in this action and (ii) the amount of security previously given to Transatlantica by Hanwin in respect of Transatlantica's claims.

Dated: October 26, 2022

                                                    Respectfully submitted,

                                                  *s/David B. Sharpe*
                                                  David B. Sharpe
                                                  Texas Fed. ID No. 145148
                                                  dsharpe@lawla.com
                                                  LUGENBUHL, WHEATON, PECK,
                                                  RANKIN & HUBBARD
                                                  601 Poydras Street, Suite 2775

New Orleans, LA 70130
Telephone: (504) 568-1990
Facsimile: (504) 310-9195

and

Todd G. Crawford
State Bar No. 05041050
Federal I.D. No. 15799
tcrawford@lawla.com
LUGENBUHL, WHEATON, PECK,
RANKIN & HUBBARD
801 Travis Street, Suite 1800
Houston, Texas 77002
Telephone: (713) 222-1990
Facsimile: (713) 222-1996

and

Brian P. Maloney
maloney@sewkis.com
Bruce G. Paulsen
paulsen@sewkis.com
SEWARD & KISSEL LLP
One Battery Park Plaza
New York, NY 10004
Telephone: (212) 574-1200
Facsimile: (212) 480-8421

### Certificate of Service

I hereby certify that this document was served upon all counsel of record this 26th day of October, 2022, via email and by operation of the Court's CM/ECF system.

*s/ David B. Sharpe*
David B. Sharpe