United States District Court
Southern District of Texas
**ENTERED**
November 02, 2022
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **TRANSATLANTICA COMMODITIES PTE LTD.,** | § § § | |
| **Plaintiff,** | § § | |
| **v.** | § § | **CIVIL ACTION NO. 4:22-CV-1983** |
| **HANWIN SHIPPING LIMITED,** *et al.,* | § § § | |
| **Defendants.** | § § § | |

### <u>MEMORANDUM AND RECOMMENDATION</u>

This is a Maritime Attachment and Garnishment brought under Rule B by Plaintiff Transatlantica Commodities Pte, Ltd. ("Plaintiff") against Defendant Hanwin Shipping Limited ("Defendant") *quasi in rem* and Garnishee American Shipping & Chartering Company, Corp. ("Garnishee"). Pending before the Court are Plaintiff's Motion for Leave to Amend its Complaint, Garnishee's Motion to Vacate or Modify the Court's Rule B Order, [1] and Defendant's Joinder and Motion to Release Writs of Maritime Attachment and Garnishment, or in the Alternative, set Security and Counter Security under Supplemental Rule E. (Dkt. Nos. 15, 18, 21.)[2] Based on a review of the motions, arguments, record, and relevant law, the Court **RECOMMENDS** Plaintiff's Motion for Leave to Amend (Dkt. No. 29), be **GRANTED**; Garnishee's Motion to Modify Rule B Order (Dkt. No. 15), be **GRANTED**; Defendant's Motion to Set Security and Counter Security (Dkt. No. 21), be **GRANTED**.

---

[1] Defendant joined Garnishee's motion to vacate or modify the Court's order. (Dkt. No. 21.)

[2] On August 8, 2022, this case was referred to the Undersigned for all purposes pursuant to 28 U.S.C. 636(b)(1)(A) and (B). (Dkt. No. 17.)

## I.      BACKGROUND

Plaintiff filed a Verified Complaint on June 17, 2022, against Defendant and Garnishee, alleging Defendant breached a maritime contract. (Dkt. No. 1.) Plaintiff pled $3,057,786.28 plus attorneys' fees and costs. (Dkt. No. 1.) The Verified Complaint asked this Court to issue a Rule B Maritime Attachment and Garnishment Order against Garnishee. The basis of Plaintiff's allegations was that Defendant could not be found within this district but was believed to have assets within this district consisting of cash, funds, accounts payable, and/or credits in the hands of Garnishee. (Dkt. No. 1.)

**Rule B Order**

On June 24, 2022, the Court granted Plaintiff's request for a Rule B Order seeking attachment and garnishment of Defendant's property within the district, including the deposits held in Garnishee's bank accounts. (Dkt. Nos. 1, 13.) The Court issued a Rule B writ of garnishment and attachment and served Garnishee at 4:43 p.m. CDT on Monday, June 27, 2022.  (Dkt. Nos. 13, 14). As originally represented, Garnishee maintains responsibilities for vessels chartered by Defendant, including $315,834.96 for the *Tac Imola* and $608,302.17 for other vessels unrelated to this dispute. (Dkt. No. 15.) Garnishee now confirms $362,781.99 is needed to satisfy outstanding third-party obligations on Defendant's behalf and at least $600,000.00 can be properly refunded to Defendant as overpayments. (Dkt. No. 55 at 1–2.)

**Motion to Vacate**

On July 25, 2022, Garnishee filed a Motion to Vacate or Modify the Rule B Order and its Answer to Plaintiff's Verified Complaint. (Dkt. No. 15.)  The basis for Garnishee's Motion was

the claim that the money Defendant transferred into Garnishee's bank account was not Defendant's property, thus, Plaintiff could not satisfy the requirements of Rule B. (Dkt. No. 15.) Specifically, Garnishee claims Plaintiff cannot meet a *prima facie* admiralty claim nor can Plaintiff prove Defendant's property is located in the district. (Dkt. No. 15.)  Garnishee requested an evidentiary hearing under Supplemental Rule E for the determination of its Motion. (Dkt. No. 15.)  Plaintiff filed a Response Opposing Garnishee's Motion to Vacate or Modify the Court's Rule B Order. (Dkt. No. 20.) Plaintiff argued Garnishee collects funds from Defendant to pay vendors on its behalf as its agent, thus, Defendant retained some form of ownership over the funds. (Dkt. No. 20.)  The evidentiary hearing was scheduled to resolve whether the funds remain the Defendant's property or are now the Garnishee's property such that attachment is proper.

## Rule E Evidentiary Hearing

On September 9, 2022, the Court held an evidentiary hearing under Rule E(4)(f)[3] where Plaintiff bore the burden of proof. Garnishee entered exhibits into the record as evidence to support its position. Plaintiff did not object. Testimony explained Garnishee operates as a port agent who assists vessel operators in calling their vessels to port, attending to the docks, arranging stevedoring and piloting, providing vessel necessaries, and arranging with United States Customs and the United States Coast Guard. (Dkt. No. 43 at 16.) The Garnishee serves as an intermediary between

---

[3] For the reasons stated on the record, the Court tentatively granted Garnishee's motion by finding the money at issue is the not the property of Defendant. After the parties received the hearing transcript, the Court ORDERED Plaintiff to submit a brief responding to the Court's tentative ruling; and ORDERED Garnishee to submit a Proposed Memorandum and Recommendation granting Garnishee's motion that contains the factual evidence and case law supporting their argument. (Dkt. No. 40.) As will be discussed herein, the Court REVERSED its initial finding, and finds Defendant retains an interest in the attached property such that attachment is proper.

foreign vessel operators and local contacts and authorities. (*Id.* at 18.) Upon a vessel operator's acceptance of fee estimates, Garnishee provides the operator with a pro-forma invoice indicating payment must be received in advance and prior to extending services. (*Id.* at 19.) Garnishee has one bank account where it receives all funds for client operations and third-party disbursements. (*Id.* at 20.) Garnishee uses the same account to pay its own expenses and bills. (*Id.*) When operators overpay for services actually incurred, Garnishee either reimburses the money to the operator or credits the amount to the operator for servicing other vessels. (*Id.* at 33.) Several exhibits were received into the record; however, Garnishee did not submit its contract with Defendant to the Court nor its contracts with third parties engaged on behalf of the Defendant. Garnishee contends there are no contracts to produce. (Dkt. No. 54.)

## II.     LEGAL STANDARD

### **Supplemental Rule B**

If a defendant is not found within the district when a verified complaint praying for attachment and the affidavit required by Rule B(1)(b) are filed, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible property—up to the amount sued for—in the hands of garnishees named in the process. Fed. R. Civ. P. Supp. Rule B(1)(a). Under Rule B, a court has jurisdiction over the defendant in an admiralty action by attaching the defendant's property that is located in the district. *Malin Int'l Ship Repair & Drydock, Inc. v. Oceanografia, S.A. de C.V.*, 817 F.3d 241, 244 (5th Cir. 2016) (citing *Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V.*, 249 F.3d 413, 421 (5th Cir. 2001)). Plaintiff must prove: a valid *prima facie* claim against the defendant; that the defendant cannot be found in the district; the

defendant's property can be found in the district; there is no statutory or maritime prohibition on the attachment. Fed. R. Civ. P. Supp. Rule B(1)(a).

Property "may be attached in the hands of the owner or in the hands of 'all others who claim any right or title to them. . . .'" *Malin*, 817 F.3d at 245 (quoting *Manro v. Almeida*, 23 U.S. (10 Wheat) 473, 491–92 (1825)). So, even though "the question of ownership is critical" when determining "maritime attachments under Rule B," Rule B does not differentiate between types of ownership. *Shipping Corp. of India v. Jaldhi Overseas PTE Ltd.*, 585 F.3d 58, 69 (2d Cir. 2016). "Rule B provides for a broad definition of property and does not require actual ownership or title." *Alaska Reefer Mgmt. LLC v. Network Shipping Ltd.*, 68 F. Supp. 3d 383, 386 (S.D.N.Y. 2014).

Courts have recognized a conditional right of title can support attachment, but temporary possession cannot. *Compare Kingston Dry Dock Co. v. Lake Champlain Transportation Co.*, 31 F.2d 265, 267 (2d. Cir. 1929) (holding where no legal title passed but the right to possess and control did pass, in combination with actual possession, the interest constituted an attachable interest), *with McGahern v. Koppers Coal Co.*, 108 F.2d 652 (3d Cir. 1940) (holding no attachable interest exists where the property holder has no "expectancy or possibility of title, conditional or otherwise"), *with Jaldhi*, 585 F.3d at 69 (holding temporary possession of an electronic funds transfer by an intermediary bank was insufficient to constitute an attachable interest). "[A]ttachment is proper so long as the defendant possesses a clear attachable interest in the property." *Alaska Reefer*, 68 F. Supp. 3d at 387. This includes when assets are held in the defendant's name or for their benefit. *See Essar Int'l Ltd. v. Martrade Gulf Logistics, FZCO*, No. 07 Civ. 3439, 2007 WL 2456629, at *2 (S.D.N.Y. Aug. 23, 2007) (indicating attachment of funds belonging to a nonparty but transferred for the benefit of the defendant was proper); *see*

*also Hanjin Overseas Bulk Ltd. v. CPM Corp.*, No. 08 Civ. 9516, 2008 WL 5429640, at *3 (S.D.N.Y. Dec. 22, 2008) (specifying that attachment of funds transferred between third parties is valid when the transfer was made for the benefit of the defendant). Ultimately, the garnishee has the right to challenge the validity of an attachment for property in its possession. *See Drew Ameroid Intern. v. M/V Green Star*, 681 F. Supp. 1056, 1058 (S.D.N.Y.1988) (citing Fed. R. Civ. P. Supp. Rule (B)(3)(a)).

**<u>Supplemental Rule E(f)(4)</u>**

"Once an attachment order has been issued, Rule E(4)(f) provides the procedure for a defendant or 'any other person claiming an interest' to seek release from the attachment." *See Boland Marine & Indus., LLC v. Bouchard Transportation Co.*, No. 1:20-CV-66-LY-ML, 2020 WL 10051743, at *2 (W.D. Tex. Feb. 28, 2020), *report and recommendation adopted sub nom. Boland Marine & Indus. v. Bouchard Transportation Co.*, 2020 WL 10051738 (Mar. 26, 2020) (citing Fed. R. Civ. P. Supp. Rule E(4)(f)). Upon request, the court will have "a prompt hearing" where the plaintiff must show "why the arrest or attachment should not be vacated." Fed. R. Civ. P. Supp. Rule E(4)(f). A "district court must [grant the motion to vacate] if the plaintiff fails to sustain his burden of showing that he has satisfied the requirements of Rule B and Rule E." *White Rosebay Shipping S.A. v. HNA Group Co.*, CA C-12-096, 2012 WL 6858239, at *9 (S.D. Tex. Dec. 5, 2012) (quoting *Naftomar Shipping & Trading Co. v. KMA Int'l S.A.*, CIV.A. V-11-2, 2011 WL 888951, at *1 (S.D. Tex. Mar. 10, 2011)).

"At a Rule E(4)(f) hearing, the court does not definitively resolve factual disputes, but rather determines whether it is likely that the alleged facts are true." *FIMBANK PLC v. Discover Inv. Corp.*, No. 2:19-CV-00264, 2020 WL 3519159, at *3 (S.D. Tex. May 21, 2020), *report and*

*recommendation adopted*, 2020 WL 3504179 (June 29, 2020). Plaintiff must show by a preponderance of evidence that it is entitled to attachment. *Vinmar Int'l Ltd. v. M/T Clipper MAKISHIO,* No. H–09–3829, 2009 WL 6567104, at *1 (S.D. Tex. Dec.9, 2009) (unpublished) (citing *Seatrade Grp. N.V. v. 6,785.5 Metric Tons of Cement*, No. CIV.A. H-05-2771, 2006 WL 126711, at *2 (S.D. Tex. Jan. 17, 2006)). Courts have analogously referred to this standard as finding "reasonable grounds" exist for the arrest of property. *Naftomar*, 2011 WL 888951, at *3.

## Supplemental Rule E(7)

> When a person who has given security for damages in the original action asserts a counterclaim that arises from the transaction or occurrence that is the subject of the original action, a plaintiff for whose benefit the security has been given must give security for damages demanded in the counterclaim unless the court for cause shown, directs otherwise. Proceedings on the original claim must be stayed until this security is given unless the court directs otherwise.

*Seatrade Grp. N.V.*, 2006 WL 126711 at *1. This rule is automatic, yet not absolute. *Id.* The purpose is to put the parties on equal footing, and in doing so, the court must consider whether: posting of countersecurity will prevent plaintiff from resolving its claims; it requires the release of seized property; the counterclaim is frivolous; there is the potential to proceed *in rem*; and any injustice would occur by requiring only one party to post security. *See Titan Navigation, Inc. v. Timsco, Inc.*, 808 F.2d 400, 403 (5th Cir. 1987); *Afram Lines Int'l, Inc. v. M/V Capetan Yiannis*, 905 F.2d 347 (11th Cir. 1990); *see Result Shipping v. Feruzzi Trading USA*, 56 F.3d 394 (2d Cir. 1995). Counter security is required only for "counterclaims [] that [are] permitted under F. R. Civ. P. 13(a)." *Incas and Monterey Printing and Packing, Ltd. v. M/V SANG JIN*, 747 F.2d 958 (5th Cir. 1984).

### III.    DISCUSSION

The question before the Court is whether the Defendant has ownership of the funds located in Garnishee's bank account, such that Plaintiff can prove Defendant's property is located in the district.[4] This is not the first dispute among these parties. (Dkt. No. 21.) Defendant represents it has posted security beyond the Southern District of Texas in the District of Massachusetts, the District of New Jersey, the Eastern District of Louisiana,[5] in the London arbitration, and in Panama. (Dkt. No. 24.) Plaintiff contends this is an overestimate and $805,057.60 is still due to secure the London arbitration. (Dkt. No. 46 at 17.) The amount at issue here is the $979,893.63 held in Garnishee's bank account. (Dkt. No. 1.) Plaintiff requests to amend its complaint to update the figures it argues it requires for securing the London arbitration. (Dkt. No. 29.) Defendant further requests the Court to post counter security for its counterclaims in the amount of $4,179,225.00 plus interest, costs, and attorneys' fees. (Dkt. No. 18 at 8.) Plaintiff disputes this amount and its duty to post counter security. (Dkt. No. 53.)

Plaintiff claims it has met its burden of proving it is likely Defendant retains a level of ownership interest in the funds located in Garnishee's bank account sufficient to deny Garnishee's motion to vacate. (Dkt. No. 20; Dkt. No. 46 at 8.) Defendant argues Plaintiff has not met the "reasonable grounds/probable cause standard" for proving Defendant's property is located in the district. *Naftomar*, 2011 WL 888951, at *3; (Dkt. No. 47 at 4.) Both Defendant and Garnishee agree that the funds are not Defendant's property, and thus attachment is not proper, despite disagreeing on the whether the funds are the Garnishee's property. (Dkt. No. 46 at 13; Dkt. No. 47

---

[4] Plaintiff filed a Motion for Jurisdictional Discovery; however, the Court RECOMMENDS this motion be DENIED as moot. (Dkt. No. 46.)

[5] Plaintiff claims *Res Judicata* would apply here through application of the Eastern District of Louisiana's Order; however, the Court does not find that the elements are met. (Dkt. No. 46 at 9–10.)

at 4; Dkt. No. 48 at 2.) All parties point to *Malin* as the dispositive case to evaluate the pending motions but advocate for a different analysis where a different outcome would likely follow. *See* 817 F.3d at 241 (5th Cir. 2016).

While Plaintiff bore the burden at the Rule E(4)(f) hearing, Garnishee's objective was to raise sufficient factual disputes regarding the ownership of the funds in question. At the conclusion of the hearing, the Court requested supplemental briefing from all parties in light of the evidence received into the record. Now before the Court is the narrow issue of whether Defendant retains such an interest in these funds that attachment is proper. Defendant and Garnishee take issue with Plaintiff meeting the third required element of Rule B. (Dkt. Nos. 47, 48.) The parties claim upon Defendant's release of its funds to Garnishee, Defendant retains no ownership interest of such funds. (Dkt. Nos. 47, 48.) The Court disagrees. Based on the rules, case law, and the evidence established in the evidentiary hearing, Plaintiff has met its burden of proving it is likely Defendant has an attachable ownership interest in the funds in Garnishee's bank account.

Plaintiff argues at the least, Defendant is the "beneficial owner" of the funds located in Garnishee's bank account. *Naftomar*, 2011 WL 888951, at *4. This corresponds with the principle that "some interest less than full ownership is sufficient for attachment" of property in the hands of Garnishee. *Malin*, 2013 WL 4505987, at *3. (Dkt. No. 50 at 2.) (holding the magistrate judge was correct in finding the Defendant's interest in the fuel bunkers was sufficient for attachment under rule B); *see also World Fuel Servs., Inc. v. SE Shipping Lines Pte., Ltd.*, No. 10–4605, 2011 WL 446653, at *2 (E.D. La. Feb. 4, 2011) (holding that a possessory interest, rather than full ownership, was sufficient for attachment because "Rule B does not identify the specific legal interest in the property that a defendant must have before it is subject to seizure"). The Fifth Circuit affirmed the district court in finding a vessel operator had an attachable interest in fuel bunkers on

its vessel even though the operator did not have legal title to the fuel bunkers. *Malin*, 817 F.3d at 244 (5th Cir. 2016).  The court upheld the attachment of fuel bunkers under Rule B. *See id.* at 245–46.

There, Oceanografia had a right to possess and use the fuel, like here Garnishee has the right to possess and use the funds deposited in the account for Defendant's benefit. *Malin*, 2013 WL 4505987, at *1–2; *see also Alaska Reefer Mgmt. LLC*, 68 F. Supp. 3d at 387 (indicating when property is held in the hands of the garnishee for the benefit of the defendant an attachable interest exists).  The Court assumes this right derived from an agreement between Defendant and Garnishee (the Court has not had the benefit of reviewing the contracts between the parties which Garnishee indicated to the Court did not exist due to an oral agreement(s)), like the right derived from the contractual agreement between Oceanografia and Cal-Dive. *Malin*, 2013 WL 4505987, at *2; Dkt. No. 54. Here, both Plaintiff and Garnishee have pointed the Court to evidence of Defendant wiring prepayment for potential services, policies between the Defendant and Garnishee for remitting over payment or application of over payment to further outstanding procured services, Defendant's control over fund disbursement to third parties, Defendant's control over which debts to discharge, Garnishee's payment of invoices based on Defendant's control and direction, and Garnishee's procurement of services for the benefit of Defendant. (Dkt. No. 44; Dkt. No. 48 at 6–8; Dkt. No. 50 at 4.)

The foundation of Garnishee's, and through joinder Defendant's, argument is that attachment is never proper under Rule B unless the defendant seemingly has legal title to the property. (Dkt. Nos. 47, 48.) But several courts have found some interest less than legal ownership sufficient to attach property to achieve the twin aims of Rule B—to secure defendant's appearance and plaintiff's satisfaction in judgment. *See Heidmar, Inc. v. Anomina Ravennate di Armamento*

*SP.A.*, 132 F.3d 264, 268 (5th Cir. 1998); *see also Jaldhi*, 585 F.3d at 68–69 (indicating under New York law defendant had an undefined property interest in electronic funds transfers and affirming some interest less than full ownership is sufficient for attachment). While Plaintiff may not have definitively established legal ownership, at this preliminary stage, it need only show probable cause as to some form of ownership. *See Naftomar*, 2011 WL 888951, at *4 (S.D. Tex. Mar. 10, 2011) (citing *A. Coker & Co., LTD. v. Nat'l Shipping Agency Corp., et al.*, 1999 WL 311941, *2 (E.D. La., May 17, 1999). Plaintiff has met this burden.

## IV.    PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT

"Rule 15(a) 'evinces a bias in favor of granting leave to amend.'" *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590 (5th Cir. 2016) (quoting *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 566 (5th Cir. 2002)). "[I]n order to take advantage of the liberal amendment rules as outlined in the Federal Rules of Civil Procedure, the party requesting amendment, even absent a formal motion, need only 'set forth with particularity the grounds for the amendment and the relief sought.'" *United States ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 330–31 (5th Cir. 2003) (quoting *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 386–87 (5th Cir. 2003)). A court may deny a request for leave to amend if there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Given that neither the Defendant nor the Garnishee have pointed the Court to any permissible reason to deny, along with the generous instruction of the Rules, the Court finds no substantial reason to deny Plaintiff's request.

V.     **GARNISHEE'S MOTION TO MODIFY OR VACATE THE COURT'S RULE B**
       **ORDER**

Garnishee has explained in briefing and through testimony how the current Rule B order has negatively impacted its ability to conduct business with third parties it relies on to service other principals. (Dkt. No. 44.) Garnishee also summarized the extensive amounts owed on accounts engaged for Defendant's benefit. (Dkt. No. 15 at 5.) Garnishee recently submitted updated information with the Court which indicates only $362,781.99 of the $979,893.63 is needed to satisfy outstanding balances related to Defendant. (Dkt. No. 55 at 1.)  It is unknown to the Court if these amounts are related to the dispute between Plaintiff and Defendant. Accordingly, the parties have agreed $617,111.64 of the $979,893.63 will be deposited with the Registry of the Court, as monies which would have otherwise been refunded to Defendant. (Dkt. Nos. 55, 58.) The remaining $362,781.99 will remain attached in Garnishee's account in accordance with a modification of the Court's Rule B Order.

Garnishee has requested to use the $362,781.99 present in its account to pay for outstanding services related to those procured for Defendant. (Dkt. No. 55 at 1–2, Dkt. No. 58.) While the Court is inclined to vacate its order and release these funds based on the principles of equity, Defendant has notified the Court it cannot post security in the same amount held by Garnishee. (Dkt. Nos. 54, 58.)  If the Court were to vacate its order, it would disadvantage Plaintiff to the benefit of Defendant and Garnishee. While "[e]quity attempts to do justice to all parties," releasing the funds in the hands of Garnishee would not achieve equity for Plaintiff here. *Bollinger & Boyd Barge Serv., Inc. v. Motor Vessel, Captain Claude Bass*, 576 F.2d 595, 598 (5th Cir. 1978). In the event Defendant is able to post security in the amount of $362,781.99, Garnishee may renew its motion to vacate the Court's Rule B Order. Once Defendant offers such security, the process of

maritime attachment and garnishment issued by this Court can be vacated, and any property attached or garnished can be released.

## VI.   DEFENDANT'S MOTION TO SET SECURITY AND COUNTER SECURITY

Defendant claims it is entitled to invoke the counter security provision of Supplemental Rule E(7) because the basis of the counterclaim is derived from the same transaction or occurrence as the current arbitration in London. *See Incas*, 747 F.2d at 964. Defendant counterclaims for losses sustained in the cargo fire aboard the M/V TAC IMOLA. Defendant claims it has suffered $4,179,225.00 in damages due to additional port changes and delays. (Dkt. No. 18 at 8.) While the "[r]ule initially appears to make the posting of countersecurity mandatory whenever its conditions are satisfied, the final clause of the quoted language makes clear that the trial court possesses broad discretion in deciding whether to order countersecurity." *Result Shipping Co. v. Ferruzzi Trading USA Inc.*, 56 F.3d 394, 399 (2d Cir. 1995) (remanding for reconsideration of denial of granting counter security on counterclaims in connection with the plaintiff's attachment of defendant's property).

Plaintiff contends the proper counter security amount is $979,893.63 if the Court orders it to post such, but only after Defendant posts security equal to the amount attached in Garnishee's bank account. (Dkt. No. 53 at 1–5.) Plaintiff argues that it must be Defendant who posts security before any duty to post counter security arises because the amounts attached in Garnishee's bank account do not trigger the Rule. (*Id.* at 4.) Here, security acts as a substitute for the interest Defendant retains in the funds in Garnishee's account. *U.S. v. Ames*, 99 U.S. 35 (1878). "Release [of the property at issue] by bond, however, is a privilege (of which most owners partake), not an obligation." *Cap. Yacht Club v. Vessel AVIVA*, 228 F.R.D. 389, 396 (D.D.C. 2005). Defendant has notified the Court it is unable to post security in the contested amount. (Dkt. No. 54.) Despite

Defendant's unwillingness or inability to post security for $979,893.63, Plaintiff still receives the benefit of Defendant's property attached in the same amount in Garnishee's hands.

The purpose of Rule E(7) "is to equalize, where not otherwise inequitable, the positions of the plaintiff and defendant with respect to security." *Result*, 56 F.3d at 400. The Rule "favors granting counter security when a defendant whose property has been attached asserts non-frivolous counterclaims growing out of the same transaction." *Id.* "The rule is straightforward. When the defendant posts security to guarantee payment of an adverse judgment—typically the posting of a bond to secure release of a vessel—the complainant may be required to furnish security for the satisfaction of a counterclaim." *Titan Nav., Inc. v. Timsco, Inc.*, 808 F.2d 400, 403 (5th Cir. 1987). "The circumstances of each case must govern the propriety of the ordering of counter security." *Id.* at 405. The Court accordingly must weigh the importance of the security interest in Plaintiff's original seizure, Plaintiff's burden in posting counter security, and any injustice with requiring the Defendant to go unsecured. *See id.* at 404.

In this case, the parties have not disputed that Defendant's claim arises from the same transaction that is the subject of the London arbitration. It is further undisputed Plaintiff has attached $979,893.63 in the hands of Garnishee. Plaintiff still argues the funds in question are Defendant's, but asserts that because the assets are attached and security has not been posted, Rule E(7) cannot be triggered. (*Id.* at 4–5.) Defendant argues this reading "elevates form over substance" and ignores the premise of Plaintiff's underlying argument of ownership. (Dkt. 56 at 8.)

Defendant has also set forth in the Verified Answer and Counterclaim it remains undersecured on its claims against Plaintiff, in the amount of $3,214,941.65 (consisting of the $4,179,225.00 in damages less the $964,283.35 posted by Plaintiff in the Massachusetts and

Louisiana actions). (Dkt. No. 21 at 5–6.) According to Rule E(7), once Defendant has filed security for the original action, and because it has filed a counterclaim that arises from the same transaction or occurrence as the original action, the Plaintiff for whose benefit the security has been given, must give security for damages demanded in the counterclaim to place the parties on a more equal footing.

Defendant represented to the Court that the attached funds are the functional equivalent of posting security because Plaintiff is secured by the cash on hand as opposed to a surety. The Court finds this persuasive. Plaintiff enjoys the protection of potential judgments in the London arbitration despite Defendant's inability to post additional security. Plaintiff has not demonstrated the "for cause shown" that would excuse it from posting counter security in the event Defendant's assets are held for Plaintiff's benefit. In opposing Defendants' motion for counter security, Plaintiff does not allege that the posting of counter security would prevent it from prosecuting its claims; nor that it will involve the release of seized property; nor that Defendant's counterclaims are frivolous. The Court finds Defendant's motion is in compliance with the core intent of Rule E(7) because both parties cannot be on equal footing unless Plaintiff is also required to post the amount attached for its benefit. While courts have used the terms post security and attach synonymously, the action attaching property and posting security in lieu of that property are not the same. Yet, the Court finds support for ordering counter security for assets attached for the Plaintiff's benefit and within the Court's discretion.[6]

---

[6] While the arguments Plaintiff makes here are distinguishable from those plaintiff made in *Finecom*, the underlying premise that counter security was ordered on the basis of attached property, as opposed to posting security, applies here as Defendant asserts. *See Finecom Shipping Ltd. v. Multi Trade Enterprises AG*, No. 05 CIV. 6695 (GEL), 2005 WL 2838611, at *2 (S.D.N.Y. Oct. 25, 2005) (holding "the goal of placing the parties in a position of equality seems best served by ordering plaintiff to provide security in the same amount, $30,000, as the plaintiff has succeeded in attaching defendant's assets, and to provide additional security matching any additional property

## VII.   GARNISHEE'S REQUEST FOR EQUITABLE VACATUR

When Plaintiff meets its burden under Rule B and E, Garnishee may request the Court grant equitable vacatur, as it has done here. (Dkt. 23 at 2–3.)

> Equitable vacatur of a Rule B attachment is appropriate only in certain limited circumstances, for example, when the defendant can demonstrate that 1) (it) is subject to suit in a convenient adjacent jurisdiction; 2) the plaintiff could obtain *in personam* jurisdiction over the defendant in the District where the plaintiff is located or 3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise.

*Malin*, 2013 WL 126534, at *3 (quotations removed). "However, 'equitable vacatur is not required even if the defendant shows at a Rule E hearing that one of the limited grounds for equitable vacatur is present.'" *Peninsula Petroleum Far E. Pte. Ltd. v. Crystal Cruises, LLC*, No. 4:22-CV-337, 2022 WL 2239847, at *2 (S.D. Tex. June 22, 2022) (quoting *Boland*, WL 10051743, at *11). The party seeking equitable vacatur has the burden of showing it is appropriate. *Preble-Rish Haiti, S.A. v. Republic of Haiti*, 558 F. Supp. 3d 430, 433 (S.D. Tex. 2021). Yet, even if the party does show one of the limited grounds are met, the Court "in its discretion must still determine whether equity weighs in favor of vacating the attachment." *Boland*, 2020 WL 10051743, at *11.

Here, Garnishee claims all grounds are met to warrant equitable vacatur. (Dkt. 23 at 2.) First, it argues Defendant is subject to a convenient adjacent jurisdiction but does not point the

---

plaintiff is able to restrain in the future, up to a maximum of $917,854.20, the amount of defendant's counterclaim"); *see also Clipper Shipping Lines Ltd. v. Glob. Transporte Oceanico S.A.*, No. 06 CIV. 15299 PKL, 2007 WL 646329, at *2 (S.D.N.Y. Feb. 26, 2007) (holding ordering plaintiff to post security for the full value of defendant's counterclaim would not achieve equality because defendant had not posted security for the full value of plaintiff's claim against it, thus only matching security was necessary to achieve equity"); (Dkt. 56 at 1–4.). Defendant cites *Voyager Shipholding Corp. v. Hanjin Shipping Co.*, to underscore that "[t]here is certainly no general principle of law limiting an award of countersecurity to the amount originally attached." 539 F. Supp. 2d 688, 693 (S.D.N.Y. 2008). It is inapplicable to determining if counter security may be ordered for property attached instead of posted. *But see Rosemary v. Jaldhi Overseas Pte Ltd.*, 531 F. Supp. 2d 586, 590 (S.D.N.Y. 2008) ("It is a well-settled principle that where a court finds counter-security to be appropriate, it should be limited to the amount that claimant has attached.").

Court to which jurisdiction is convenient and adjacent. (*Id.*) Second, Garnishee contends Plaintiff can obtain *in personam* jurisdiction over Defendant in a district Plaintiff is located but does not describe where or how. (*Id.*)  Third, Garnishee indicates Plaintiff has already obtained sufficient security for its judgment but does not support this contention with exhibits or figures pertaining to Plaintiff. (*Id.*) Plaintiff argues equitable vacatur is not appropriate in this case because the District of Massachusetts is not an available adjacent convenient jurisdiction, Defendant has not posted counter security as ordered by that court, and it has not obtained sufficient security for its potential arbitration award by at least $805,057.60. (Dkt. 46 at 17.)

Garnishee claims Defendant is subject to suit in a convenient adjacent jurisdiction. (Dkt. 23 at 2.)  Courts in the Southern District of Texas and in the Southern District of New York have construed "the 'convenient adjacent jurisdiction' ground for equitable vacatur narrowly," to mean geographically adjacent to the current district. *Peninsula*, 2022 WL 2239847, at *4 (citing *Preble-Rish*, 558 F. Supp. 3d at 432–33) (concluding that the "convenient adjacent jurisdiction" ground for vacatur was not present even though the Rule B plaintiff had filed a related action to confirm and enforce an arbitration award in federal district court in New York)); *see also Milestone Shipping, S.A. v. Estech Trading LLC*, 764 F. Supp. 2d 632, 637 (S.D.N.Y. 2011) (denying a motion to vacate in the Southern District of New York because the proposed convenient alternative jurisdiction in Ohio was not adjacent to the district). Defendant is subject to suit in several jurisdictions, the closest to this district being the Eastern District of Louisiana. Yet, this still does not meet the threshold for adjacent convenient jurisdiction. Accordingly, the Court finds Garnishee has not shown that Defendant is subject to suit in a convenient adjacent jurisdiction.

Next, Garnishee indicates Plaintiff could obtain *in personam* jurisdiction over Defendant where Plaintiff is located. Garnishee does not explain where sufficient minimum contacts within

*any* district will meet the due process standard necessary for service. (Dkt. 23 at 2.) While Plaintiff does not directly address this argument, it does not bear the burden of proof for an equitable vacatur request. Garnishee does. Garnishee does not point the Court to any evidence to support this limited ground. The Court finds Garnishee has not shown that Plaintiff could obtain *in personam* jurisdiction over Defendant where Plaintiff is located.

Last, Garnishee claims Plaintiff has obtained sufficient security for the London arbitration, but its claim is equally unsupported. Plaintiff repeatedly contends it is undersecured and it has produced corresponding amounts that tend to indicate as much. Plaintiff has further notified the Court that Defendant is not in compliance with the order issued in the District of Massachusetts ordering counter security. When the Court questioned Defendant regarding this matter in a recent status hearing, Defendant confirmed it had not complied with the order from the Massachusetts court, and likewise, if this Court ordered it to post security it would be unable to do so. (Dkt. No. 54.) The Court finds Garnishee has not shown Plaintiff is sufficiently secured in the London arbitration.

The Court finds that balance of equities here weighs against Garnishee. Even assuming Garnishee has shown one of the limited grounds for equitable vacatur exist here, the Court in its discretion must determine if equity is in favor of vacating the attachment. Garnishee has failed to show that equity favors the very limited application of equitable vacatur. While Garnishee claims all grounds of equitable vacatur are met, it failed in each instance to support its assertions, thus Garnishee's burden for this request is not met. The balance of equities weighs against vacatur because without this Rule B attachment of Defendant's funds held by Garnishee, there is the distinct possibility that any arbitration award for Plaintiff would go largely unsatisfied. Defendant has already indicated it does not intend to post further security despite an order from the Court.

18

Based on Defendant's representations, it has not demonstrated it has sufficient assets to satisfy any adverse outcome rendered in the London arbitration.

Garnishee did not ask to be brought into Court nor expect its separate agent operations to be affected by conducting business for the benefit of Defendant, which the Court recognizes. This could be resolved, and Defendant's third-party obligations extinguished, by Defendant posting security. The Court "cannot assume control over ... imperfect obligations, resting upon conscience and moral duty only, unconnected with legal obligations," solely based upon general principals of equity. *Seguros Banvenez, S.A. v. S/S Oliver Drescher*, 761 F.2d 855, 863 (2d Cir. 1985) (quoting *Rees v. City of Watertown*, 86 U.S. 107, 121 (1874)).

## VIII.   CONCLUSION

Based on the foregoing, the Court **RECOMMENDS:**

(1)      Plaintiff's Motion for Leave to Amend (Dkt. No. 29), be **GRANTED**;

(2)      Garnishee's Motion to Modify Rule B Order (Dkt. No. 15), be **GRANTED and $617,111.64 of the $979,893.63,** upon agreement of the parties, be **DEPOSITED** with the Registry of the Court within fifteen (15) days; and

(3)      Plaintiff **POST** security in the amount of **$979,893.63** within fifteen (15) days if there are no objections; if there are objections, and they are overruled by the district court, Plaintiff must comply within fifteen (15) days of the district court's order.

(4)      **IT IS FURTHER RECOMMENDED** that this case hereby is stayed pending the outcome of charter party arbitration between Plaintiff and Defendant or until further order of this Court.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant

to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the Undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas on November 2, 2022.

Sam S. Sheldon
United States Magistrate Judge