IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Transatlantica Commodities Pte Ltd., Plaintiff | § § § | Civil Action No: H-22-cv-01983 |
| v. | § § | |
| Hanwin Shipping Limited, Defendant, and | § § § § | In Admiralty under FRCP 9(h) |
| American Shipping & Chartering Corp., Garnishee | § § § | |

**OBJECTIONS TO MAGISTRATE'S MEMORANDUM & RECOMMENDATION (DOC. NO. 59) BY GARNISHEE AMERICAN SHIPPING & CHARTERING CORPORATION**

**To The Honorable Andrew S. Hanen:**

Garnishee American Shipping & Chartering Corporation ("ASCC") respectfully files and serves these Objections to the Memorandum and Recommendation (Doc. 59) ("M&R") issued by Magistrate Judge Sam Sheldon on November 2, 2022.

### OVERVIEW OF THE OBJECTIONS

1. ASCC holds great respect for the Magistrate Judge in this proceeding. However, ASCC respectfully suggests the analysis and framework of the M&R is both factually and legally incorrect. **Thus, ASCC objects to the finding in the M&R that Hanwin generally has some property interest in the $979,893.63 currently held by ASCC to allow those funds to be garnished under Rule B.**[1] **ASCC also objects to the finding in the M&R that Transatlantica satisfied its burden under Rules B and E to show "probable cause as to some form of ownership."**[2] First, the M&R fails to analyze key facts present in the record. Second, the M&R does not apply long-held principles of the General Maritime Law of the United States that state

---

[1] *See* Doc. No. 1 and the Rule B Order (Doc. No. 13) dated June 24, 2022.
[2] See Doc. No. 59, at page 11.

1

law can fill gaps in maritime law under the Reverse-*Erie* doctrine, and thus does not apply Texas law to the issue of whether money in a bank account is the sole property of the account holder. Third, because of the M&R's first two deficiencies, it incorrectly applies a legal lens through cases provided by Transatlantica Commodities Pte Ltd. ("Transatlantica") and reaches an incorrect result. The omission of those facts, detailed below, when combined with what ASCC believes to be the applicable and binding law, conclusively demonstrates to this Honorable Court this fact: <u>*the money in ASCC's bank account, under the General Maritime Law of the United States and Texas law, is ASCC's sole property*</u>. Hanwin Shipping, Limited ("Hanwin") retains no residual interest in those funds, aside from those funds to which Hanwin is now due a refund. Thus, the M&R should be modified, and $362,781.99 should be released from the Rule B order to ASCC, with the remainder of $617,111.64 transferred by ASCC to the Court's escrow account as Hanwin's security. Transatlantica should then be ordered to post counter-security in the latter amount.

### OBJECTIONS TO THE FACTS AND RELEVANT BACKGROUND PORTION OF THE M&R

2. At the Rule E Hearing, Lutz Knickrehm, the corporate representative of ASCC testified ASCC owns the bank account in question, owns the money in the account, and needs to use that money to satisfy debts ASCC incurred in the course of its work for Hanwin.[3] Exhibits 1 through 9 also established ASCC's exclusive ownership of the bank account in question.[4] ASCC also introduced, through the testimony of Mr. Knickrehm and Exhibits 2-9, that Hanwin electronically transferred (as opposed to a delivery of cash) the money in question.[5] These are critical facts overlooked in the M&R. The M&R also fails to address the issue of who incurred

---

[3] Hearing Transcript, page 47, line 8 to page 48, line 11. It is ASCC's understanding the Court has a copy of this transcript. If such is needed, ASCC will provide a copy of the transcript to the Court.
[4] *See* Doc. No. 35, ASCC's exhibit list. Notably, Transatlantica made no objections to these exhibits, which are part of the evidentiary record.
[5] For example, see Mr. Knickrehm's testimony on page 61, lines 1-3 of the Hearing Transcript, and Exhibits 2-9, which document the wire transfers.

the debts. Mr. Knickrehm testified , and numerous exhibits evidence, all of the invoices from the vendors to the vessels at issue issued those invoices directly to ASCC, and not to Hanwin.[6] There is no evidence in the record to contradict this testimony.

3. ASCC thus formally objects to the omitted facts from the M&R as described above. As the Court will see, the omission of those facts leads the M&R down a flawed analytical path that ultimately led to an incorrect result. Both 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b) establish the standard of review by a District Court reviewing the M&R of a Magistrate Judge is *de novo.* Under this standard, this Honorable Court has the power to correct the mistakes found in the M&R.

<p style="text-align:center;">**OBJECTIONS TO THE LEGAL STANDARD & LEGAL ANALYSIS IN THE M&R**</p>

<u>Texas Law Should Fill the Gaps</u>

4. Jurisdiction under Rule B (and thus under Rule 12(b)(1)) exists only if the Court can attach the ***defendant's personal property.*** *Submersible Sys. Inc. v. Perforadora Cent. S.A. de C.V.*, 249 F.3d 413, 421 (5th Cir. 2001) (emphasis added). In other words, "if the res is not the property of the defendant, then the court lacks jurisdiction." *Shipping Corp. of India v. Jaldhi Overseas PTE Ltd.*, 585 F.3d 58, 69 (2d Cir. 2016). However, Rule B does not define the term "personal property." *Malin Int'l Ship Repair & Drydock, Inc. v. Oceanographia*, 817 F.3d 241, 245 (5th Cir. 2016). Specifically, Rule B does not define "tangible or intangible personal property" and "provides no guidance as to what type of property interest is attachable." *Malin*, 817 F.3d at 245 (cleaned up). When federal maritime law is silent, courts generally look to state law to determine property rights. *See California ex rel. State Lands Comm'n v. United States*, 457 U.S. 273, 283 (1982) (considering state law where federal admiralty law is "thin.").

---

[6] Hearing Transcript, page 48, lines 6-11. *See also* Exhibits 10-27 and Exhibit 3, as shown on Doc. No. 35. Transatlantica objected to none of these exhibits.

FIRMDMS\220713\000001\30463716.v3-11/16/22

5.  There simply is no defining rule of decision, whether there is a naturally occurring gap in the jurisprudence, or whether courts can bend such a gap into existence to use state law.[7] In these instances, Gilmore and Black, authors of an ovular treatise on Admiralty law, politely described the situation as one where "the cases cannot be wholly harmonized."[8] Into this void enters the 1955 Supreme Court opinion of *Wilburn Boat Co. v. Fireman's Fund Ins. Co.* 348 U.S. 310, 313 (1955). The general holding of *Wilburn Boat* is: if there is not a federal maritime rule (i.e., the maritime law is silent), state law can be used to fill the gaps provided the state law in question does not offend a maritime interest. 348 U.S. at 313, *see also Norfolk Southern Ry. v. James N. Kirby, Pty Ltd.*, 543 U.S. 14, 27 (2004). The Fifth Circuit recently restated in this rule in *Garcia v. United States* in 2021. *See* 986 F.3d 513, 532 (5th Cir. 2021).[9]

6.  None of the parties was able to provide the Magistrate Judge with direct, on-point authority as to whether a shipping company like Hanwin retains a property or ownership interest in money in a ship agent's ("ASCC's") bank account. In this instance, the Magistrate Judge did his best to piece together a framework of analysis for this issue. But, in the opinion of ASCC, the Magistrate Judge got it wrong. Thus, ASCC Objects to the analysis found on pages 4-11 under the headings "Legal Standard" and "Discussion" in the M&R, for the reasons stated below.

<u>The M&R Incorrectly Construes *Malin*</u>

7.  In *Malin Int'l Ship Repair & Drydock, Inc. v. Oceanography S.A. DE C.V.*, the Fifth Circuit held a vessel operator had an attachable interest in fuel bunkers on its vessel even though the vessel had not yet paid for said fuel bunkers. 817 F.3d 241, 244 (5th Cir. 2016).[10] The Fifth

---

[7] As to this latter point, see *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199 (1996).
[8] Grant Gilmore & Charles L. Black, Jr., THE LAW OF ADMIRALTY, §1-17 (2 ed. 1972).
[9] Notably, the *Garcia* court stated the general rule of *Wilburn Boat* but declined to apply it so as to prohibit bystanders from bringing a products liability claim under Texas law. Fifth Circuit jurisprudence in the GML contradicted Texas law in this regard. Here, there is no GML or Fifth Circuit position on this issue.
[10] *See also* Hearing Transcript, page 79, line 16 to page 80, line 2.

4

Circuit ultimately upheld the attachment of fuel bunkers under Rule B, in part because Texas common law (as the UCC was silent) showed the vessel operator had some interest in the bunkers through a title transfer prior to taking full possession. *See* 817 F.3d at 245-46.

8. ASCC contends *Malin* provides the correct legal framework for analyzing this case, but *Malin* is factually distinguishable from this case because fuel bunkers (a tangible asset) are different from the funds in ASCC's bank account.[11] The text of *Malin* supports ASCC's position.

9. The M&R misrepresents and misapplies the facts and rulings of *Malin*. The M&R states the Fifth Circuit upheld the district court in finding that the vessel operator had an attachable interest in the fuel bunkers "even though the operator did not have legal title to it."[12] This is incorrect. In *Malin*, the Fifth Circuit construed Texas contract law and found the vessel operator and the vessel owner entered into a credit sale of the fuel bunkers whereby title to the fuel bunkers passed upon delivery to the vessel operator. 817 F.3d at 248-49. The Fifth Circuit held that the vessel operator "received title to the bunkers . . . the day that it took possession of the [vessel]." 817 F.3d at 249. The Fifth Circuit explicitly stated that the vessel operator "held title to the bunkers at the time of . . . attachment." *Id.*

> Under this analysis, OSA received title to the bunkers on October 15, 2012, the day that it took possession of the M/V KESTREL. Malin attached those bunkers on October 29, 2012. Because OSA held title to the bunkers at the time of Malin's attachment—and title to property unquestionably suffices as an attachable interest under Rule B—we affirm the district court's denial of OSA's motion to vacate the attachment.

---

[11] Hearing Transcript, page 80, lines 8-17 and page 81, lines 2-4.
[12] *See* Dkt. No. 59 at 9-10.

10. Moreover, the M&R incorrectly reads the *Malin* Court's application of a cited case, *Alaska Reefer Mgmt., LLC v. Network Shipping, Ltd.* from the Southern District of New York in 2014. 68 F. Supp. 3d 383 (S.D.N.Y 2014). The Fifth Circuit cited *Alaska Reefer* to illustrate the inconsistency of various federal appeals courts on the application of the ownership element of Rule B. *See* 817 F.3d at 245. Moreover, *Alaska Reefer* does not address the issue of whether a shipping company retains some property interest in the funds in an agent's bank account. Instead, *Alaska Reefer* dealt with a situation where the plaintiff garnished **<u>the defendant's</u>** bank account through J.P. Morgan Chase in New York City. 68 F. Supp. 3d 383, 385. Under the *Malin* analysis, of course the defendant would have title to the money in its own bank account. Thus, the M&R's reliance upon *Alaska Reefer* is simply factually and legally incorrect.

11. Ultimately, the Fifth Circuit held in *Malin* that the fuel bunkers were attachable because the vessel operator received title to them (under Texas law) upon delivery of the vessel. 817 F.3d at 248-49. Thus, even if the vessel operator did not possess the bunkers, it had some interest in them. *Id.* There is no argument Hanwin holds title to the money in ASCC's bank account, either in the M&R or in Transatlantica's briefing. Due to the M&R's failure to properly analyze *Malin*, ASCC objects to the M&R.

<u>The M&R Incorrectly Analyzes *Jaldhi* and Second Circuit Cases</u>

12. The other key case cited by ASCC is *Shipping Corp. of India v. Jaldhi*, a 2009 Second Circuit decision. 585 F.3d 58 (2nd Cir. 2009). In that case, the Second Circuit, in what it called a "mini *en banc*" decision,[13] over-ruled a prior Second Circuit opinion – *Winter Storm Shipping, Ltd. v.* TPI, 310 F.3d 263 (2d Cir. 2002) – and held Electronic Fund Transfers could not be attached when they passed through an intermediary bank located in New York City. 585 F.3d

---

[13] 585 F.3d 58, 67, n. 9.

58 (2d Cir. 2009). The Second Circuit ultimately determined the GML was silent on the issue of whether an EFT constituted the personal property of a defendant, and New York law, specifically the New York State version of the Uniform Commercial Code did not support or constitute a transfer of property to trigger Rule B (or Admiralty) jurisdiction. 585 F.3d at 69-71.

13. The M&R incorrectly states *Jaldhi* held a defendant maintained an undefined property interest in EFTs under New York Law.[14] In *Jaldhi*, the Second Circuit actually rejected this argument, as noted above. Moreover, the *Jaldhi* court over-ruled and expressly rejected the prior circuit jurisprudence, found in *Winter Storm Shipping, Ltd. v.* TPI, 310 F.3d 263 (2d Cir. 2002). The M&R also incorrectly claims two unreported Southern District of New York decisions, *Essar International, Ltd. v. Martrade Gulf Logistics*, 2007 WL 2456629 (S.D.N.Y. August 23, 2007) and *Hanjin Overseas Bulk Ltd. v. CPM Corp.*, 2008 WL 542640 (S.D. N.Y. Dec. 22, 2008) support Hanwin holding a beneficial interest in ASCC's money. Both of these decisions cannot serve as a basis for this Honorable Court's decision here.

14. In *Essar*, the garnished party stipulated the attached funds "represented payment of a debt owed" by the named defendant, and that the garnished party and defendant structured the transaction in a way to avoid the attachment order. *Essar*, 2007 WL 2456629 at *1. Transatlantica elicited no such stipulation or testimony from ASCC or Mr. Knickrehm. There is no indication of any such factual similarity in the record of this case.

15. Irrespective of the factual difference in *Essar*, use of either *Essar* or *Hanjin* in the M&R is made more egregious, as both decisions are founded in the 2002 *Winter Storm* opinion from the Second Circuit. *See* Hanjin at *7-8 (citing to *Winter Storm* and *Essar*). However, as we know, *Jaldhi* over-ruled and expressly rejected the *Winter Storm* analysis. Thus, these cases, in

---

[14] Doc. No. 59, page 11.

addition to being non-binding precedent, are not even binding precedent within the Southern District of New York. They should not form the basis of any decision of this Honorable Court. And, because the M&R improperly reads and relies upon these decisions to reach its conclusion, ASCC objects to the M&R on these grounds.

The Correct Legal Framework

16. The correct legal framework is to recognize there is no direct rule in the GML and look to state law to establish whether Hanwin can retain some property interest in the money in ASCC's bank account. The basis for this frame work comes from the Fifth and Second Circuits. The *Malin* court looked to the equivalent of Article 2 of the UCC in Texas, which is Chapter 2 of the Texas Business and Commerce Code. 817 F.3d 241, 247-48 (5th Cir. 2016).[15] The *Jahldi* decision from the Second Circuit looked to the New York version of the UCC. 585 F.3d 58, 70-71 (2d Cir. 2009).[16] Thus, ASCC respectfully suggests this Honorable Court should look to Texas law on ownership of the money in bank accounts under the Texas version of the UCC to determine whether Hanwin could ever hold a property interest in the money in ASCC's account.

17. ASCC's oral argument and subsequent briefing provided the Court with several Texas statutes defining "property." ASCC cited several provisions of the Texas Business & Commerce Code (including Sections 4A.210 &4A.211), various provisions of the Texas Tax Code and Texas Penal Code, as well as Section 28.028 of Texas Estates Code in its prior briefing. When read through the *Malin* lens, the Court should hopefully recognize Texas law does not support anyone other than a bank account holder having any type of ownership interest in the funds in a bank account.

---

[15] Ultimately, *Malin* determined Texas common law governed a bareboat charter, and found under Texas common law, combined with the charter language, gave the vessel operator some interest in the fuel bunkers at issue.
[16] As New York law did not allow for attachment of EFTs, the Second Circuit held a Rule B attachment was inappropriate.

18. Notably, under the Texas Business & Commerce Code, when a sender executes a wire transfer, the recipient becomes the owner and controller of the money, not the sender. See TEX. BUS. & COM. CODE §4A.210 and 4A.211. The Texas Tax Code defines property as:

> any matter or thing capable of private ownership," personal property as everything other than real property that is subject to ownership, and intangible personal property as claim, interest (other than an interest in tangible property), right, or other thing that has value but cannot be seen, felt, weighed, measured, or otherwise perceived by the senses, although its existence may be evidenced by a document.

TEX. PROP. TAX CODE §§ 1.04(1), (4), and (6). Section 22.028 of the Texas Estates Code defines property as an "interest in: . . . money." TEX. ESTATES CODE § 22.028. Under Texas law, bank accounts qualify as personal property that can be passed down and inherited. *See In Re Estate of Hunt v. Vargas*, 597 S.W.3d 912 (Tex. App.—Houston [1st Dist.] 2020, no pet.).

19. The Texas statutes cited by ASCC support ASCC's position that the money in its bank accounts belong to ASCC. Under Sections 4A.210 and 4A.211 of the Texas Business & Commerce Code, when a sender executes a wire transfer, the recipient or its bank has the authority to accept or reject the wire. The sender may only amend or cancel the wire by request to the bank *before* acceptance or, if after acceptance, must secure the bank's *agreement* to the amendment or cancellation. Thus, under the plain language of these statutes, when Hanwin submitted its payment orders by wire to ASCC, it relinquished ownership and control of the wired money and is unable to retrieve the funds without the permission of ASCC or its bank. Transatlantica does not provide the Court with any Texas legal authority to show a continued interest in bank account funds in the maritime context for the principal to an agent.

20. Transatlantica bore the burden of proof on each element of Rule B in the Rule E Hearing. *See Parcel Tankers, Inc. v. Formosa Plastics Corp.*, 764 F.2d 1153, 1155 (5th Cir. 1985);

9

*see also Salazar v. Atlantic Sun*, 881 F.2d 73, 79 (3$^d$ Cir. 1989); *Amstar Corp. v. S/S Alexandros T.*, 664 F.2d 904, 912 (4th Cir. 1981). The standard utilized by other Judges in this District, and that should be used here, is one of reasonable grounds, meaning is it more likely than not a plaintiff meets the elements of Rule B. *See Seatrade Group, N.V. v. 6,785.5 Metric Tons of Cement*, 2006 AMC 193, 2005 U.S. Dist. LEXIS 43060 (S.D. Tex. 2005)(Rosenthal, J.)(citing to *Amstar* at 912).

21. Even under this standard, Transatlantica failed to meet its burden. When the Court combines these statutes to fill the gaps of maritime law with the undisputed evidence established in the Evidentiary Hearing, reasonable grounds do not exist that Transatlantica satisfies the third element of Rule B – that the property subject to the Rule B Order is that of Hanwin. Specifically, ASCC introduced the formation papers for ASCC's bank account into evidence, without objection.[17] Knickrehm testified ASCC solely controls the account and the account is ASCC's property.[18] There is no actual evidence, other than argument of counsel, to contravene these facts. There simply is no legal basis where Transatlantica or the M&R can demonstrate any form of ownership over the funds in ASCC's account.

22. However, in the interest of full disclosure, ASCC advised the Court in post-hearing briefing that ASCC learned only $362,781.99 of the $979,893.63 is now outstanding to the vendors for Hanwin's vessels. Thus, per Mr. Knickrehm's testimony, ASCC would refund the remaining balance, $617,111.64 to Hanwin. ASCC concedes Hanwin would have less than a full, but still some, property interest, in that $617,111.64.

23. ASCC thus believes a modification of the M&R is in order. First, this Honorable Court should hold, as a general rule (and applying the analytical framework of *Malin* and *Jaldhi*), that money held in a Texas bank account is the sole property of the owner of that bank account.

---

[17] See Exhibit 1, as shown in Doc. No. 35.
[18] Hearing Transcript, page 20:23-23:7; 32:22-33:1.

This means, at first glance, all of the $979,893.63 currently subject to the Rule B Order should be released back to ASCC's control, as it is ASCC's sole property. However, the Court would be within the facts and the law to also hold Hanwin retains a less than full property interest in $617,111.64 of the monies held by ASCC currently under the Rule B Order, as ASCC acknowledges Hanwin is due that amount as a refund.

### OBJECTIONS TO THE EQUITABLE VACATUR FINDING

24. **ASCC also objects to the M&R's finding of no grounds for equitable vacatur**. The Court misstates ASCC's position for equitable vacatur—first, by improperly stating that ASCC argues that all three conditions for equitable vacatur are met,[19] and second, by ignoring the evidence cited by ASCC in support of equitable vacatur.[20]

25. ASCC did not argue that Hanwin is subject to suit in a convenient, adjacent jurisdiction, as the facts clearly do not support such a position. Instead, ASCC argues that equitable vacatur is appropriate because (1) a court could obtain *in personam* jurisdiction over Hanwin in a district where Transatlantica is located and (2) Transatlantica already obtained sufficient security for its judgment.[21]

26. First, a court could obtain *in personam* jurisdiction over Hanwin in another district. Hanwin and Transatlantica are currently involved in attachment litigation in the Eastern District of Louisiana, the District of New Jersey, the District of Maryland, and Panama.[22] Additionally, Hanwin subjected itself to the jurisdiction of the District of Massachusetts by suing Transatlantica. ASCC's motion does not merely assert these facts without evidentiary support; instead ASCC expressly incorporates Hanwin's arguments in its Joinder and Motion to Release Writs of Maritime

---

[19] *See* Dkt. No. 59 at 16.
[20] *See* Dkt. No. 59 at 17-18.
[21] *See* Dkt. No. 23 at 2-3.
[22] *See* Dkt. No. 23 at 3.

Attachment and Garnishment, or in the Alternative, Set Security and Counter-Security. ("Hanwin's Joinder")[23] Moreover, Hanwin's Joinder provides a detailed list of each of the lawsuits between Transatlantica and Hanwin,[24] where a court could otherwise obtain *in personam* jurisdiction over Hanwin. Thus, equitable vacatur is appropriate because Hanwin is available in another district where Transatlantica is located.

27.     Second, equitable vacatur is appropriate because Transatlantica has already obtained sufficient security for its judgment, as detailed in Hanwin's Joinder[25] and incorporated in ASCC's request for equitable vacatur.[26] Specifically, Transatlantica has attached funds and received security totaling $3,323,622.31. Although granting ASCC motion for equitable vacatur would result in a decrease in the funds by $979,893.63 (the amount of the attached funds in ASCC's account), Transatlantica would still be sufficiently secured because it has already received over $1,000,000.00 more than the amount it asserted as a claim in the actions pending in New Jersey and Maryland.[27]

28.     The simple fact is this Court can rectify what the M&R recognizes is a wholly unequitable situation as to ASCC. There are invoices for which ASCC is directly liable that ASCC cannot pay because of the Rule B Order. Hanwin made a general appearance in Massachusetts, and Transatlantica is involved in that litigation. This Honorable Court can give ASCC back its property, and take the money due to be refunded to Hanwin as security, on the grounds of equity, for any of the reasons stated above. While ASCC believes its analysis of the actual Rule B property issue is correct, this Honorable Court is not limited to just that avenue to find an equitable result.

---

[23] *See* Dkt. No. 23 at 3 (citing Hanwin's Joinder, Dkt. No. 21.)
[24] *See* Dkt. No. 21 at 3-5.
[25] *See* Dkt. No. 21 at 5-6.
[26] *See* Dkt. 23 at 3.
[27] *See* Dkt. 21 at 5.

## CONCLUSION & REQUESTED RELIEF

29. ASCC respectfully requests this Honorable Court make two rulings to correct the factual and legal errors in the M&R. First, this Honorable Court should hold, consistent with Texas law, that money in a corporate entity's bank account is the property of that entity alone. Second, ASCC currently holds $979,893.63 in a separate bank account under the Garnishment Order ("Doc. No. 4, 13). Under this general rule, all of that money is solely ASCC's property. But, given ASCC's admission of a refund due to Hanwin in the amount of $617,111.65, the M&R should be modified to release $362,781.99 of the garnished funds to ASCC as its sole property, with the remaining balance of $617,111.64 to be transferred to the Court's Escrow Account.

30. Alternatively, ASCC requests this Honorable Court reach the same result as described in paragraph 29, but on equitable vacatur grounds. Finally, if the prior arguments fall flat, ASCC requests this Honorable Court set a firm deadline whereby Transatlantica must post counter-security. If Transatlantica does not post adequate counter-security by this date, the money in ASCC's account should be released, even under the M&R's thoughtful but flawed analysis.

## PRAYER & CONCLUSION

WHEREFORE, PREMISES CONSIDERED, ASCC respectfully requests this Honorable Court over-rule the Memorandum and Recommendation of Magistrate Judge Sam Sheldon (Doc. No. 59) as described herein, release $362,781.99 of the Garnished Funds back to ASCC as ASCC's sole property, and order ASCC to transfer $617,111.64 of the Garnished Funds to the Court's Escrow Account.

Respectfully submitted,

**CHAMBERLAIN, HRDLICKA, WHITE, WILLIAMS & AUGHTRY, P.C.**

By: /s/ *F. Daniel Knight*
F. Daniel Knight
State Bar No. 24041265
SDTX Bar No.: 37334
1200 Smith Street, Suite 1400
Houston, Texas 77002
(713) 658-2571
(713) 658-2553 (Fax)
daniel.knight@chamberlainlaw.com

**ATTORNEYS FOR ASCC**

**CERTIFICATE OF SERVICE**

The undersigned attorney verifies his Firm served a true and correct copy of this document via Efile Service and/or Email upon counsel of record for both Transatlantica and Hanwin under the Federal Rules of Civil Procedure on the 16th day of November, 2022.

/s/ *F. Daniel Knight*
F. DANIEL KNIGHT