IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Transatlantica Commodities Pte Ltd., | * | |
| Plaintiff, | * | Civil Action No.: 22-cv-1983 |
| v. | * | IN ADMIRALTY |
| Hanwin Shipping Limited, et al., | * | |
| Defendant and Garnishee. | * | |

\* \* \* \* \* \* \* \* \*

**TRANSATLANTICA'S RESPONSE TO
<u>ASCC's AND HANWIN'S OBJECTIONS TO MAGISTRATE'S REPORT AND
RECOMMENDATIONS [ECF 62 AND ECF 63]</u>**

Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), S.D.Tex L.R. 72, and General Order 2002-13, Plaintiff Transatlantica Commodities Pte Ltd. ("Transatlantica" or Plaintiff) respectfully submits the following response to Garnishee American Shipping and Chartering ("ASCC's") and Hanwin Shipping Limited's ("Hanwin") response to Magistrate Memorandum and Recommendations [ECF 62] and [ECF 63].

## <u>RESPONSE</u>

ASCC's objections reduce down to two arguments: (1) legally Texas law should fill an imagined "gap" in federal maritime law and (2) ASCC needs the money to pay creditors. When needs must, the devil drives. Fundamentally, ASCC "needs to use that money to satisfy debts ASCC incurred in the course of its work for Hanwin." ASCC then contends that somehow because it "needs" the money to satisfy debts ASCC incurred" on behalf of Hanwin, without support in either the factual record or legally, that the "money in ASCC's bank account, under the General Maritime Law of the United States and Texas law, is ASCC's sole property." ECF

62 at 2. However, these arguments have already been made and already been rejected by Magistrate Sheldon in issuing his Memorandum. Moreover, there is no gap in federal maritime law as under federal law, both in the Fifth Circuit and elsewhere, something less than legal title is sufficient for attachment purposes. *Malin*, 817 F.3d. at 245-46; *see also Heidmar, Inc. v. Anomina Ravennate di Armamento SPA*, 132 F.3d 264, 268 (5th Cir. 1998); *Jaldhi*, 585 F.3d at 68-69 (affirming some interest less than full ownership is sufficient for attachment). Moreover, as the Memorandum correctly finds, Transatlantica need not have definitively established legal ownership at this stage. It need only show probable cause as to some form of ownership. *Naftomar Shipping & Trading Co. v. KMA Int'l SA*, 2011 WL 888951, at *4 (S.D.Tex. Mar. 10, 2011). The Memorandum properly finds that is what Transatlantica did. ECF 59 at 9.

Legally, the Memorandum finds that under Rule B "Plaintiff must provide a valid prima facie claim against the defendant; that defendant cannot be found in the district; the defendant's property can be found in the district; and there is no statutory or maritime prohibition on the attachment. Memorandum at 4-5.

Indeed, the very case, *Shipping Corp of India v. Jaldhi Overseas PTE Ltd.*, 585 F.3d 58 (2nd Cir. 2016) which ASCC relies on in its attempt to argue that that the "res is not the property of the defendant" is considered and examined in the Memorandum. ECF 59 at 5. ASCC argues without merit that there is a "gap" in federal law because Rule B does not provide what type of property interest is attachable. However, Rule B is not the end point on federal law on this subject. The *federal* cases interpreting Rule B must also be considered which the memorandum does. "Attachment is proper so long as the defendant possesses a clear attachable interest in the property." *Alaska Reefer Mgmt LLC v. Network Shipping Ltd.*, 68 F.Supp. 3d 383, 387 (2nd Cir. 2014). This includes when assets are held in the defendant's name or for their benefit. *See Essar*

*Int'l Ltd. V. Martrade Gul Logistics, FZCO,* No. 07 Civ. 3439, 2007 WL 2456629, at *2 (S.D.N.Y. Aug. 23, 2007) (indicating attachment of funds belonging to a nonparty but transferred for the benefit of the defendant was proper.); see also Hanjin Overseas Bulk Ltd v. CPM Corp., No. 08 Civ 9516, 2008 WL 5429640, at *3 (S.D.N.Y. Dec. 22, 2008) (specifying that attachment of funds transferred between third parties is valid when the transfer was made for the benefit of the defendant). ASCC concedes in its objections that the funds were held "to satisfy debts ASCC incurred *in the course of its work for Hanwin*." ECF 62 at 2. There is also little doubt that ASCC acted as ships agent on behalf of Hanwin. Nor were these facts "over looked" by the Memorandum: "The parties claim upon Defendant's release of its funds to Garnishee, Defendant retains no ownership interest of such funds." ECF 59 (Memorandum) at 9. Indeed, the Memorandum specifically indicates that it considered: "evidence of Defendant wiring prepayment for potential services, policies between the Defendant and Garnishee for remitting overpayment or application of over payment to further outstanding procured services, Defendant's control over fund disbursement to third parties, Defendant's control over which debts to discharge, Garnishee's payment of invoices based on Defendant's control and direction, and Garnishee's procurement of services for the benefit of Defendant). ECF 59 (Memorandum) at 10.

Moreover, ASCC's argument that the Court ignored that it, not Hanwin, is the legal owner of the accounts where the funds were placed distills to the argument that legal title is necessary to attach funds. ASCC's argument that the funds are held in an account which it owns are irrelevant and ignores Fifth Circuit law. That argument runs afoul of the Fifth Circuit holding in *Malin*. In *Malin*, 817 F.3d 241, 245 (5th Cir. 2016), the Court upheld the attachment of fuel bunkers under Rule B even though the operator did not have legal title to the fuel

bunkers. *Id*. at 245-46; *see also Alaska Reefer Mgmt LLC*, 68 F. Supp.3d at 387 (indicating that when property is held in the hands of the garnishee for the benefit of the defendant an attachable interest exists). As the memorandum properly found, some interest less than legal ownership sufficient to attach property and achieve the aims of Rule B—to secure Defendant's appearance and plaintiff's satisfaction in judgment. ECF 59 at 10.

Hanwin's argument that the Memorandum applies the wrong standard is also unavailing. Indeed, the memorandum specifically applies the standard Hanwin advances. ECF 59 at 7 ("Plaintiff must show by a preponderance of the evidence that it is entitled to attachment"). This is the "reasonable grounds" standard which the Magistrate applied. *Id*. The Memorandum also specifically found that ASCC did not submit its contract with Defendant nor its contracts with third parties engaged on behalf of Hanwin. Hanwin's argument that Transatlantica has had ample time for discovery is also flawed.

## **CONCLUSION**

Transatlantica respectfully objects to Magistrate Sheldon's Memorandum and Recommendation on the grounds set forth in its objection [ECF 61], and prays that the Memorandum and Recommendation be partially adopted as to findings (1), (2) and (4) and that the Memorandum and Recommendation be rejected as to finding (3) that "Plaintiff post security in the amount of $979,893.63…" because Hanwin has not posted the security that is required under Rule (E(7) and the law of this Circuit.

Transatlantica further requests that this Court order Hanwin to post security in the amount of $979,893.63 in order for the $979,893.63 held by the Supplemental Rule B writ to be released, but that if Hanwin does not post that security, that this Court order that garnishee ASCC continue to hold the $979,893.63 amount in security for the ongoing London arbitration.

Dated: November 30, 2022.

                                                  Respectfully Submitted,

                                                  /s/ J. Stephen Simms
J. Stephen Simms
Catherine M. Benson
Simms Showers LLP
201 International Circle, Suite 230
Baltimore, Maryland 21030
443-290-8704
Fax 410-5610-1789
jssimms@simmsshowers.com
cmbenson@simmsshowers.com

Transatlantica Counsel

## **CERTIFICATE OF SERVICE**

I certify that on this November 30, 2022 I caused the foregoing to be filed on this Court's CM/ECF system for service on all record counsel.

                                                  /s/ J. Stephen Simms