# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS
*In Admiralty*

| | | |
|---|---|---|
| Hanwin Shipping Limited, | * | |
| *Plaintiff* | * | |
| v. | * | Civil No. 1:22-cv-11182-RWZ |
| Transatlantica Commodities Pte Ltd., Millenary Shipping LP | * | |
| *Defendants, in personam* | * | |
| and | * | |
| The Master of the M/V Tac Imola | * | |
| *Garnishee* | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*  \*  \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

_____

## DECLARATION OF YIN MING
_____

I, YIN MING, pursuant to 28 U.S.C. §1746, declare as follows:

1. I am the sole director of Plaintiff Hanwin Shipping Limited ("***Hanwin***") in this action. I am duly authorised by Hanwin to make this Declaration on its behalf. Save where expressly stated to the contrary, the facts and matters to which I depose in this Declaration are within my own knowledge and are true. Where the facts and matters deposed to in this Declaration are not within my own knowledge, they are based on the documents Hanwin has in its possession or from the sources indicated below and are true to the best of my knowledge, information, and belief.

**EXHIBIT 2**

2.      I make this Declaration in support of Hanwin's motion for reconsideration of the Court's order dated 24 August 2022 for Hanwin to post countersecurity in the amount of US$988,793.21 (the "*Countersecurity*").

3.      There is now produced and shown to me marked **"YM-1"** a bundle containing true copies of documents to which I shall refer during the course of this Declaration. Refence to page number in this Declaration is reference to the page number in the attached bundle.

4.      As will be made clear in this Declaration, it is inequitable for Hanwin to pay the Countersecurity because:

a) Hanwin's claim is meritorious;

b) The payment of the Countersecurity will cripple Hanwin's finances and stifle Hanwin's meritorious claim; and

c) The payment of the Countersecurity cannot be said to be "*levelling the playing field*" between the parties but will tilt the playing field to the Defendants' favour, in light of the actions of defendant Transatlantica Commodities Pte Ltd. ("*Transatlantica*") to this point.

A) *Hanwin's claim against the Defendants are Meritorious*

5.      I am verily advised and believe that Hanwin's claim in the matter to be stayed in favour of London Arbitration under English law is meritorious. I am advised that this is a factor which the Court should take into account of Hanwin's motion.

6.      As stated in the introduction, I am the sole director of Hanwin. There is now exhibited at pp 1 to 2 a copy of the Hanwin's register of directors.

7.      Pursuant to a charterparty (the "*Charterparty*") dated 3 November 2021 (exhibited at p. 3 to 47) made between Transatlantica Commodities Pte Ltd, as Owner, and Hanwin Shipping Limited, as Charterer, the Owner agreed to charter the m.v. "TAC IMOLA" (the "*Vessel*") to the Charterer and the Charterer agreed to take the Vessel on charter.

**EXHIBIT 2**

8. On around 24 November 2021, pursuant the terms of the Charterparty, the Vessel took on loaded cargoes of plywood and Antboxes in the port of Qing Dao, China, bound for Baltimore, Maryland. Upon completion of loading, the Vessel departed from Qingdao on 26 November 2021. The stowage diagram is exhibited at page 48.

9. The parties' dispute arises from a fire on board the Vessel, which happened on 3 December 2021, merely one week from the date of discharge. Subsequent investigation suggested that the fire started because of frictional heating between the Antboxes and the Plywood, which points to issues in stowage, lashing, and securing of the cargo.

10. As a result of the fire, the damaged cargo required special handling to discharge from the Vessel. The Vessel has had to make unscheduled port calls to discharge portions of the damaged cargo, and port terminals have charged significantly more for the special handling to offload the damaged cargo. These additional expenses amount to US$4,020,898.44 to date.

11. Clause 9 of the fixture recap in the Charterparty (page 7) stated that "*arbitration if any in London with English law to apply.*"

12. Clause 8 of the Charterparty (page 11) also provided as follows: "*Charterers are to perform all cargo handling (to load, stow, lash, trim, discharge) at their expense under the supervision **and responsibility** of the Captain.*" (Emphasis added).

13. I was advised by Hanwin's English lawyers that under English law, the addition of "*and responsibility*" rendered Defendants, being the Owners of the Vessel under the Charterparty, to be liable for negligence in the cargo operations. The negligence of cargo operations rendered the Vessel unseaworthy, which is again Owners' liability.

14. On the flipside, Transatlantica's counterclaim alleged that it should be Hanwin who is liable for the negligent cargo operations. I was advised and verily believe that the

3

**EXHIBIT 2**

burden lies on Transatlantica to supply proof that notwithstanding the clear wordings in Clause 8, the liability of cargo operations fell on Hanwin.

B) *Payment of Countersecurity will stifle Hanwin's Claim*

15. As a result of the fires on board the Vessel, which was caused by the Defendant's negligence, Hanwin is under serious financial strain. Simply put, Hanwin has no means to pay the Countersecurity into Court due to the losses accumulated, the escalating legal costs, and the amount of security paid into various jurisdictions, due to Transatlantica's conduct.

16. As stated at paragraph 9 above, Hanwin has suffered more than US$4 million damages. The losses stemmed from the significant delay as a result of the fire. The Vessel was originally scheduled to discharge in January 2022, but this was actually only completed in July 2022. Hanwin has sub-chartered the Vessel out on voyage charters and therefore the Vessel generated no income from January 2022 to July 2022.

17. On the other hand, Transatlantica still received a significant part of hire payment from Hanwin. While Hanwin has a meritorious claim against Transatlantica all along, Hanwin had no choice but to continue to pay hire so that Transatlantica would not suspend the service of the Vessel. From January 2022 to July 2022, Hanwin has paid Defendant US$3,209,574.30 being hire for the use of the Vessel, while the Vessel generated no income for Hanwin in this period.

18. Further, Hanwin has posted significant amounts of security to secure the release of the properties arrested by Transatlantica on the basis of its counterclaim. Despite Transatlantica's *prima facie* liability for negligent stowage, Transatlantica has commenced different arrest proceedings in United States and Panama in order to secure their alleged counterclaim. As a result, Hanwin had no choice but to pay security to secure the release of the properties. To date, without accounting for the countersecurity, Hanwin has posted

**EXHIBIT 2**

US$3,428,479.53 in various actions in the United States and in other jurisdiction, which has caused unprecedented strain on the finances of Hanwin. A breakdown of the sums paid in security are as follows:

| Jurisdiction | Amount (US$) |
|---|---|
| London Arbitration | 800,000.00 |
| D.N.J. Case No. 22-cv-3348 | 195,857.22 |
| E.D. La., Case No. 22-cv-2454 | 400,000.00 |
| S.D. Tex., case no. 22-cv-1983 | 979,893.63 |
| Panama proceedings against M.V. BELKNIGHT | 856,871.46 |
| TOTAL | 3,232,622.31 |

19. For the London Arbitration and the Defendant's various arrest proceedings in United States and Panama, Hanwin has expended around US$561,399.38 of legal costs to date. Most of the costs of Hanwin's UK lawyers were incurred to deal with the hire dispute with the Defendant and coordinating the various jurisdictions. Even excluding Hanwin's UK Lawyers, the fees in US and Panama alone adds to US$443,245.03. The breakdown of Hanwin's legal fees is as follows

| Item | Amount (US$) |
|---|---|
| UK lawyers | 118,154.35 |
| US lawyers in Massachussets, New York and New Orleans | 419,935.66 |
| Panama Lawyers | 23,309.37 |
| TOTAL | 561,399.38 |

**EXHIBIT 2**

20. As a result of the above factors, Hanwin's financial resources have been depleted. Hanwin is a small company with limited resources. It was able to afford to charter and operate around three vessels, with the subject Vessel being one of them. The fact that the Vessel generated no income for half a year has therefore severely undermined Hanwin's revenue stream. Hanwin also owns no real properties or Vessels which can be leveraged for financing.

21. As of the end of September 2022, the balance of Hanwin's bank account has only US$75,785.62 left, having accounted for all operational expenses. (See page 50 to 55 for Hanwin's updated bank statement from 24 August 2022 the date of the security being ordered up to the date of this Declaration, with translation at page 56 to 60). I confirm that this is the only bank account of Hanwin.

22. The statements, identities and bank account numbers of the payor have been redacted as they are commercially confidential information. However, the nature of the payment can be deduced from the unredacted parts. Most of the remittance are to/from third parties for payment of hire, freight, towage charges, survey charges and other services. These are commitments which Hanwin had before the Court made the Order of security.

23. In the past months, due to the financial strain brought about by the events in this Declaration, Hanwin relied on loans from City Expansion Limited, which is a company owned by my friend and Hanwin's former director, Mr Jiang Chunrong, to sustain its operation. In September, for example, the Court can see that City Expansion Limited advanced a total of US$500,000.00 to Hanwin's Account on 5 September 2022 to 7 September 2022. However, that amount is barely sufficient to support Hanwin's operation. Due to the financial strain on City Expansion Limited, it will be unable to advance further loans to Hanwin. I crave leave to refer to the Declaration of Jiang Chunrong filed together with this Declaration.

**EXHIBIT 2**

24. The Company has two shareholders – me and Mr. Cao Ming. There is exhibited at page 62 Hanwin's certified shareholding chart. Unfortunately, I cannot afford to advance a loan for the Countersecurity ordered by the Court. I am a businessman with limited means and I am unable to advance a loan so that Hanwin can meet the order for the Countersecurity.

25. Hanwin's 1% shareholder, Mr Justin Cao Ming, is an employee of the company and I have confirmed with Mr. Cao that he also does not have any means to lend money for the Countersecurity to be paid.

C) *Payment of Countersecurity tilt the balance entirely in the Defendant's favour*

26. I am advised and verily believed that in deciding whether Countersecurity should be paid, the Court would consider whether it will level the playing field of the parties. As will be seen below, the payment of Countersecurity will not level the playing field but will tilt the balance of the dispute entirely in favour of the Defendant.

27. At present, the balance is already heavily in the Defendant's favour

a) As stated in paragraph 17, the amount of security securing the Defendant's counterclaim exceeds US$3,428,479.53, while the security of US$564,283.35 paid by the Defendant in this Action is the only amount securing Hanwin's claim;

b) As stated in paragraph 16, Hanwin received no income for the Vessel since January 2022, while the Defendant have received hire from Hanwin for the use of the Vessel in that period, although such use was only necessitated by Defendant's liability in stowage and securing of the cargo; and

c) The Defendant still have the means to commence various arrest proceedings in US and Panama, while Hanwin, at its present financial condition, will have difficulty pursuing its claim in the London Arbitration.

**EXHIBIT 2**

28. The above is in stark contrast with the comparative merits of the parties' claims. Hanwin's claim and Transatlantica's counterclaim concerns the same transaction, the liability of which is yet to be determined.

29. If Hanwin is compelled to pay the Countersecurity notwithstanding this application, the balance will be tilted entirely in the Defendant's favour. The Defendant's counterclaim will be nearly fully secured by the amount of US$3,428,479.53 already paid into the US and Panama courts and the escrow account, while Hanwin's claim will be entirely unsecured as the security paid in this action will be released. Alternatively, even if Hanwin was able to scrounge whatever financial resources it had to pay countersecurity, Hanwin will have no financial means to defend the Defendant's counterclaim in the London Arbitration.

30. I would also ask the Court to be mindful of the fact that Hanwin has been put into this financial situation as a result of Transatlantica's conduct in bringing about numerous proceedings in various jurisdiction and demanding security in various jurisdictions.

### D) Delay of the Motion

31. I apologize for the delay in taking out this application. It was originally the intention of Hanwin to attempt to comply with the order of the Court to the best of its abilities. However, as the deadline for payment of the Countersecurity drew near, it became clear that Hanwin was not able to raise additional financial resources to meet the Court's order. As a result, Hanwin took out the application in hopes that the Court can re-consider the amount of Countersecurity.

### E) Conclusion

32. Hanwin therefore prays to the Court that Hanwin be relieved from complying with the Order to pay the Countersecurity in these proceedings or alternatively reduce the amount of security payable.

**EXHIBIT 2**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: October 12, 2022

_____
**Yin Ming**

**EXHIBIT 2**

_____

**EXHIBIT "YM– 1"**

_____

This is the exhibit marked "**YM-1**" referred to in the DECLARATION OF YIN MING executed on the 12th day of October 2022.

| Item | Description | Date | Page |
|---|---|---|---|
| 1. | Hanwin's Register of Director | Undated | 1 to 2 |
| 2. | Charterparty between Hanwin and the Defendant | 3 November 2021 | 3 to 47 |
| 3. | Stowage diagram of the Vessel | Undated | 48 |
| 4. | Hanwin's bank statement from 24 August 2022 to present | Various | 49 to 61 |
| 5. | Hanwin's shareholding diagram | 12 October 2022 | 62 |

**EXHIBIT 2**