IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Transatlantica Commodities Pte Ltd., | * | |
| Plaintiff, | * | Civil Action No.: 22-cv-1983 |
| v. | * | IN ADMIRALTY |
| Hanwin Shipping Limited, et al., | * | |
| Defendant and Garnishee. | * | |

* * * * * * * * *

**TRANSATLANTICA'S RESPONSE TO THE COURT'S ORDER ON WHETHER ENGLISH LAW CONTROLS THIS DISPUTE**

Responding to this Court's Order [ECF 69], Transatlantica states that English law does not apply to (or control) **this** dispute, for arbitration security.

This is **not** a Supplemental Rule C arrest case on a maritime lien *in rem* – it is a Supplemental Rule B attachment case.

Transatlantica (or Hanwin in its counterclaim) have **not** pursuant to Supplemental Rule C arrested a vessel *in rem* based on a contract incorporating English law.[1] Transatlantica has attached Hanwin property pursuant to Supplemental Rule B and there is no maritime lien *in rem* involved.

---

1 *Carl Enterprises v. Barge Hudson Handler*, 475 F.Supp. 42, 44 (S.D. Ala. 1979)(no arbitration or security involved; Rule C *in rem* arrest of vessel), *Rainbow Line, Inc. v. M/V Tequila*, 341 F. Supp. 459, 463 (S.D.N.Y. 1972), *affirmed, Rainbow Line, Inc. v. M/V Tequila*, 480 F.2d 1024 (2d Cir. 1973)(partial citation by ASCC in its reply; finding maritime lien *in rem* and U.S. law applying), all cited by ASCC [ECF 66] are *in rem* vessel arrest cases – pursuant to Supplemental Rule C – not Supplemental Rule B attachment cases.

For the clear distinction between Rule C and Rule B proceedings, *see Heidmar, Inc. v Anomina Ravennate Di Armanento Sp.A. of Ravenna*, 132 F.3d 264, 268 (5th Cir. 1998) and the opinion from this District it vacated, *Heidmar, Inc. v. Anomina Ravennate Di Armamento Sp.A. of Ravenna*, 993 F. Supp. 990, 994 (S.D. Tex. 1997), *vacated sub nom. Heidmar, Inc. v Anomina Ravennate Di Armanento Sp.A. of Ravenna*, 132 F.3d 264 (5th Cir. 1998).[2]

Plaintiff in *Heidmar* both arrested (asserting a maritime lien *in rem* against the Vessel, Supplemental Rule C), and attached the Vessel (Rule B) as defendant's property. The District Court vacated the arrest looking to the English law of the parties' contract (because, English law doesn't provide for *in rem* arrest). Both the District Court and Fifth Circuit recognized that English law, however, had nothing to do with the distinct Rule B attachment ( and on other grounds, the Fifth Circuit upheld the Rule B attachment).

Similarly, in *Victory Shipping Pte. Ltd. v. 50,109 Metric Tons of Cement*, No. 4:22-CV-03689, 2022 WL 17738735, at *5 (S.D. Tex. Dec. 16, 2022), *vacating on reconsideration previous opinion, Victory Shipping Pte. Ltd. v. 50,109 Metric Tons of Cement*, No. 4:22-CV-03689, 2022 WL 17095921, at *1 (S.D. Tex. Nov. 21, 2022),[3] the plaintiff brought both Rule B and C claims in security for London arbitration. Amongst much discussion of English law focusing on the Rule C *in rem* vessel arrest claim (and significantly no raising of English law concerning the separate, Rule B claim. Judge Edison held:

---

[2] *See also Psara Energy, Ltd. v. Space Shipping, Ltd.*, 427 F. Supp. 3d 858, 869 (E.D. Tex. 2019)(" The instant dispute can be referred to London arbitration, while the Rule B attachment still remains in effect in this court and applies as valid security for the claim.")

[3] ASCC's memorandum/ reply, ECF 66, Nov. 30, 2022, at 3, cites to this later vacated and invalid decision (ASCC's citation, *Victory Shipping Pte Ltd. v. 50,109 Metric Tons of Cement (In re M)*. Civil Action No. 4:22-cv-036892, 2022 U.S. LEXIS 210261 at *2, *7 (S.D. Tex. Nov. 21, 2022)).

> Accordingly, it is neither improper, nor is it a violation of either the letter or the spirit of the Supplemental Admiralty Rules, for Victory Shipping to seek [Rule B] attachment as security for its valid maritime claim.

*Victory Shipping Pte. Ltd,* 2022 WL 17738735, at *3.

Supplemental Rules B and C are United States procedure. Rule B ("*In Personam* Actions: Attachment and Garnishment")[4] requires:

> (1) When Available; Complaint, Affidavit, Judicial Authorization, and Process. In an *in personam* action:
>
> (a) If a defendant is not found within the district when a verified complaint praying for attachment and the affidavit required by Rule B(1)(b) are filed, a verified complaint may contain a prayer for process to attach **the defendant's tangible or intangible personal property**—up to the amount sued for—**in the hands of garnishees named in the process**.

(Emphasis added). Transatlantica's action here of course is an *in personam* action (for security) against Hanwin.

Rule C ("*In Rem* Actions: Special Provision" – again, not involved at all here)[5] instead states:

> (1) When Available. An action *in rem* may be brought:
>
> (a) To enforce any maritime lien . . .

So, Rule B attachment turns on whether the garnishee holds the defendant's property – Rule C arrest turns on whether the plaintiff has an *in rem* maritime lien to enforce.

Transatlantica's Verified Complaint [ECF 1] sets out that Transatlantica brought this case pursuant to the Federal Arbitration Act to secure London arbitration against Hanwin:

> 1. This is an action within this Court's admiralty jurisdiction pursuant to 28 U.S.C. § 1333 and is an admiralty or maritime claim within Fed. R. Civ. P. 9(h). This action further is pursuant to the Federal Arbitration Act, 9 U.S.C. §8 in that it is a maritime

---

[4] Text for quick reference at https://www.law.cornell.edu/rules/frcp/rule_B

[5] Text for quick reference at https://www.law.cornell.edu/rules/frcp/rule_C

> action to obtain security for London maritime arbitration as required by the charter party for the M/V TAC IMOLA between Transatlantica as Owner and Hanwin as Charterer, as more fully set out herein.

9 U.S.C. §8[6] ("Proceedings begun by libel in admiralty and seizure of vessel or property") states as follows:

> If the basis of jurisdiction be a cause of action otherwise justiciable in admiralty, then, notwithstanding anything herein to the contrary, the party claiming to be aggrieved may begin his proceeding hereunder by libel and seizure of the vessel or other property.

All agree, that the cause of action (breach of a vessel charter party) is an admiralty action ( a maritime claim),[7] and Transatlantica ("claimint to be aggrieved") has seized "other property" of Hanwin pursuant to Supplemental Rule B.

---

[6] Hanwin's counterclaim against Transatlantica [ECF 18] likewise states as follows:

> 2. This Counterclaim is within the Court's admiralty jurisdiction, 28 U.S.C. § 1333, and is designated as an Admiralty and Maritime claim within the meaning of Fed. R. Civ. P. 9(h).
>
> 3. This Counterclaim is also made pursuant to the Federal Arbitration Act, 9 U.S.C. § 8, and the New York Convention, 9 U.S.C. § 201 *et seq*., to obtain security for a maritime arbitration between the parties pending in London.

[7] Even though there is no dispute as to this question of whether there is an admiralty or maritime claim here, English law does not apply to that determination, either. *See Blue Whale Corp. v. Grand China Shipping Dev. Co.,* 722 F.3d 488, 495 (2d Cir. 2013)("[W]hether a claim sounds in admiralty is a procedural question, the answer to which supplies the source of a court's subject matter jurisdiction.")*; Euro Tr. Trading S.A. v. Allgrains U.K. Co*., No. 09 CIV. 4483 (GEL), 2009 WL 2223581, at *3 (S.D.N.Y. July 27, 2009)(Supplemental Rule B case: "It does not matter how the case would be characterized under the law of some other country, even if that country's law provides the rules governing the substance of the claim."); *see also* SLS *Shipbuilding Co. v. Ionia Mgmt. S.A*., No. H-11-271, 2011 WL 2652365, at *4 (S.D. Tex. July 5, 2011)((Ellison, J.("The Court holds that whether a claim is considered maritime for purposes of Rule B is a question of federal law.").

"It has long been settled that a charter-party is a maritime contract and that disputes arising therefrom are within the admiralty jurisdiction of the United States courts. *Morewood v. Enequist*, 23 How. 491, 64 U.S. 491, 16 L.Ed. 516 (1860)." *Victory Transp. Inc. v. Comisaria*

Transatlantica and Hanwin presently are in London arbitration over issues arising out of Hanwin's charter from Transatlantica of the M/V TAC IMOLA. English or other law as the charter party specifies governs the merits of those London arbitration proceedings between Transatlantica and Hanwin, but does not apply to this case. This case is for arbitration security **only** pursuant to 9 U.S.C. §8 to seize the property of Hanwin (as security) and not on the merits ( which the London arbitration will decide, and enter an arbitral award ultimately to be satisfied by the security).

Consequently Transatlantica proceeded here pursuant to Supplemental Admiralty and Maritime Rule B to garnish, by way of the Rule B writ issued by order of this Court, property of Hanwin in this District held by its local (and national ) agent, garnishee American Shipping and Chartering Corporation ("ASCC").

The only issues here, for security, on the question of application of law are (a) whether there is alleged breach of maritime contract and thus admiralty jurisdiction (there is, both Transatlantica and Hanwin agree) and (b) whether garnishee ASCC holds Hanwin property (and on this Transatlantica, and the U.S. Magistrate's Report and Recommendation for the purposes of Rule B, also agree).

Whether ASCC holds Hanwin property is a question of U.S. (and Texas) law: ASCC is in Texas, the accounts it holds of Hanwin's are in Texas. English law does not apply and has nothing to do with whether the property ASCC holds is Hanwin's. In fact the only place English

---

*Gen. de Abastecimientos y Transportes*, 336 F.2d 354, 364 (2d Cir. 1964); accord, *Jurisdiction. Bunge Corporation v. The M/V FURNESS BRIDGE*, 390 F.Supp. 603 (E.D.La.1974).

law enters in, again, is under the Transatlantica-Hanwin charter party in the merits of the arbitration between Transatlantica and Hanwin.

Rejecting the argument that English law in a charter party somehow barred a Rule B attachment, the Court in *Filia Compania Naviera, S.A. v. Petroship, S.A.*, 1982 WL 195514, at *3–4 (S.D.N.Y. Mar. 18, 1982) writes as follows:

> Although the parties intended that London arbitration serve as the forum for resolution of the merits of the charter party dispute under English law, by its terms it did not limit access to courts elsewhere for procedural purposes such as the enforcement of an English arbitration award or the satisfaction of a judgment. The parties did not delimit the procedures or the fora to be addressed for these purposes and the reasoning of *Andros Compania Maritima, S.A. v. Andre & Cie., S.A.*, 430 F.Supp. 88, will be applied.
>
> Petroship also contends that even if Rule B applies, the agreement that the "charter party be governed by English Law" requires application of English law which it contends bars prejudgment attachment. However, I conclude that there is a distinction between the instant agreement which selected English law to be applied to the charter party and an agreement to have all the disputes and procedures for resolving those disputes governed by English law. A general principle of conflict of laws provides that on procedural matters, as opposed to substantive rights of the parties, the law of the forum applies due to the interest of the forum in the manner of judicial administration. See generally *Hausman v. Buckley*, 299 F.2d 696, 700 (2 Cir.),*cert. denied*, 369 U.S. 885, (1962) (Under New York law procedural questions are governed by the law of the forum); Restatement (Second) of Conflicts of Law, secs. 10, 122-136 (On issues of procedure and judicial administration the law of the forum generally applies). Although the use of this forum to obtain a Rule B attachment is primarily procedural, particularly in the light of the arbitration proceeding in London, nonetheless, the attachment does provide subject matter jurisdiction resulting in the application of United States procedural law . . . .

/

[Continued on Next Page]

/

Once there is an arbitral award, which will be for Transatlantica, the award will be presented for recognition by this Court and satisfied in part (Transatlantica's claim in arbitration significantly exceeds the approximately $980,000 of Hanwin funds garnishee ASCC is holding subject to this Court's Rule B writ) by the security/garnished funds.

Dated: March 9, 2023.

Respectfully Submitted,

/s/ J. Stephen Simms

J. Stephen Simms
Catherine M. Benson
Simms Showers LLP
201 International Circle, Suite 230
Baltimore, Maryland 21030
443-290-8704
Fax 410-5610-1789
jssimms@simmsshowers.com
cmbenson@simmsshowers.com

Transatlantica Counsel

**CERTIFICATE OF SERVICE**

I certify that on this March 9, 2023 I caused the foregoing to be filed on this Court's CM/ECF system for service on all record counsel.

/s/ J. Stephen Simms